371 A.2d 1346

**COMMONWEALTH of Pennsylvania**

v.

**Charles E. KINDNESS, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1976.

Decided March 31, 1977.

William H. Nast, Jr., Harrisburg, submitted a brief for appellant.

Reid H. Weingarten, Harrisburg, with him Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant was convicted, after a nonjury trial which he concedes was free of error, of driving under the influence of intoxicating liquor.[1] This appeal followed. His sole contention is that he was unconstitutionally denied the right to participate in the Accelerated Rehabilitative Disposition program.

The A.R.D. program was created by the Pennsylvania Supreme Court in the exercise of its supervisory power over the lower courts. The authorization is found in Pa.R. Crim.P. 175–85, 19 P.S.Appendix. A recent opinion of the United States District Court for the Middle District of Pennsylvania, *Shade v. Pennsylvania Dep't of Transp.*, 394 F.Supp. 1237, 1240 (1975) contained the following accurate description of the program:

"The ARD program provides a means of suspension of formal criminal proceedings before conviction on the condition that the accused will do something in return, such as make restitution, participate in a rehabilitation program, undergo psychiatric treatment, hold certain employment, or otherwise modify his behavior. The ARD rules provide that after a defendant is held for court by an issuing authority or after an information or indictment, the district attorney sua sponte or at the request of defendant's attorney may move that the case be considered for ARD. The district attorney has the discretion to refuse to ask for ARD and to insist on prosecuting the defendant for the offense. Pa.R.Crim.P. 175 and 176. If the district attorney moves that the case be considered for

[1]. Act of April 29, 1959, P.L. 58, 75 P.S. 1037.

ARD, a hearing is held in open court in the presence of the defendant at which the court determines: (1) whether the defendant agrees to the conditions of the ARD program, Pa.R.Crim.P. 178; and if so, (2) whether the judge will grant the Commonwealth's motion for ARD, Pa.R.Crim.P. 179. Thus, the district attorney and the county judge must both agree that the defendant should receive the benefit of ARD, thereby avoiding criminal prosecution. The conditions of the ARD program may be the same as may be imposed with respect to probation after conviction of a crime, including restitution and costs, and any other conditions agreed to by the parties, except that a fine may not be imposed and the period of the ARD program cannot exceed two years, Pa.R.Crim.P. 182. When the defendant has satisfactorily completed the ARD program prescribed for him and complied with its conditions, the charges against him upon order of court will be dismissed. Pa.R.Crim.P. 185. Should the defendant fail to complete the ARD program satisfactorily, he may be prosecuted for the offense charged as he might have been originally. Pa.R.Crim.P. 178, 183, 184."

After appellant in this case was arraigned, he filed a "Motion for Submission of Case for Consideration under Accelerated Rehabilitative Disposition Program." The court directed the Commonwealth to file an answer, which it did, asserting that the decision to submit or not submit a case for ARD consideration was within the discretion of the District Attorney, who declined to submit the instant case for two reasons:

"First, the Dauphin County Court has requested the District Attorney not to submit this type of offense for ARD consideration; and second, the District Attorney believes that ARD of this type of offense is not in the best interest of the public in light of the ever increasing problem that the drunken driver reeks [sic] upon our society."

The court below agreed with the Commonwealth, denied the motion, and directed the District Attorney to call the case for trial. Appellant was found guilty and sentenced to pay

a fine of $300 plus costs, and undergo probation for a period of one year.

Appellant asserts that prosecutorial consent cannot constitutionally be a prerequisite to the admission of a defendant into the program, because such a requirement represents an improper delegation of a judicial function. The flaw in this argument is more easily seen if the process called diversion [2] is separated into its two constituent parts: (1) probation and (2) eventual dismissal of charges.

■ A prosecutorial decision not to move a particular case for ARD does not prevent the court from ultimately placing the defendant in that case on probation in the event of a guilty verdict or a guilty plea. This appellant, in fact, was placed on probation. Since there is no interference with the judicial power to determine the mode of correction to which a particular defendant will be subjected, there is no delegation of sentencing power.

■ The conditional agreement to dismiss charges at a specified future time is a result of a concurrence between the prosecutor and the court. There is no deviation from the constitutionally required separation of powers here.

In contending otherwise, appellant primarily relies on *People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1975), wherein the California Supreme Court held that a statutory requirement of prosecutorial concurrence in a diversion decision was unconstitutional, and stated that the decision to divert a defendant into a rehabilitation program is an exercise of a judicial power and therefore cannot constitutionally be subordinated to a veto of the prosecutor. The court also said:

"The judicial power is compromised when a judge, *who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss* but finds that before he may do so he must bargain with the

2. The term "diversion" refers to a variety of schemes under which a defendant agrees to participate in a rehabilitation program in return for the suspension of prosecution, with dismissal to follow upon successful completion of the program.

prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise." [Citation omitted; emphasis added.] *Id.* at 25, 520 P.2d at 409.

To the reader unfamiliar with California law, the decision implies that a court has an inherent power to dismiss a criminal charge in the interests of justice. However, the power referred to is given to California courts by a provision in that state's penal code, to-wit Pen.Code Section 1385, which reads in pertinent part:

"The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." [3]

Another California case, *People v. Gonzales*, 235 Cal. App.2d Supp. 887, 890, 46 Cal.Rptr. 301 (1965) makes the following observation:

"We are reminded that the powers now vested in the courts by the Legislature by virtue of Penal Code section 1385, stem from the historical powers of nolle prosequi which were traditionally vested in the Attorney General of England and in the prosecuting attorneys in the American states."

The authorities are virtually unanimous that the historical power to "nol pros" belonged at common law solely to the Attorney General and remains an exclusive prosecutorial power in the absence of a state constitutional or statutory provision to the contrary. See Annotation, 69 A.L.R. 233. An excerpt from the case annotated there, *State ex rel.*

---

3. The conclusion that the separation of powers provision in the California Constitution, Art. 3, section 3, was violated by allowing a prosecutor to block diversion was not based upon any theory of an inherent power to dismiss, but followed from the extension of the separation-of-powers doctrine to conferred as well as inherent powers. See *Esteybar v. Municipal Court*, 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 (1971). We have grave doubts about the logic of elevating a conflict between statutory provisions to a constitutional level in this manner. We need not decide the question, however, as the analysis *infra* shows that the power in question has not been conferred upon Pennsylvania courts.

*Groesbeeck v. Anderson*, 119 Tex. 110, 26 S.W.2d 174, 177 (1930) is most enlightening:

"How firmly the rule vesting the exclusive power in the prosecuting officer to dismiss a case was established at common law is forcibly and effectively illustrated in a conversation relating to the commitment for seditious language of certain persons belonging to a sect called "Prophets." Lacy, one of the friends of the prisoners committed, assumed to intercede for them, and upon his conference with Lord Holt the following colloquy is reported:

Lacy: 'I come to you, a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for Mr. Atkins, His servant, whom thou hast cast into prison.'

Chief Justice Holt: 'Thou art a false prophet, and a lying knave. If the Lord God had sent thee, it would have been to the Attorney General, for He knows that it belongeth not to the Chief Justice to grant a nolle prosequi, but as Chief Justice, I can grant a warrant to commit thee to bear him company.' 2 Campbell's Lives of the Chancellors, 173."

Returning to 1977 and to Pennsylvania, we must determine where the power of nolle prosequi now lies. The answer is found in the Act of Mar. 31, 1860, P.L. 427, § 29, 19 P.S. 492 (1964), which provides:

"No district attorney shall, in any criminal case whatsoever, enter a nolle prosequi, either before or after bill found, without the assent of the proper court in writing first had and obtained."

This Court held in *Commonwealth v. Reed*, 65 Pa.Super. 91, 99 (1916) that:

"[19 P.S. 492] limited the power of the prosecuting officer to enter a nolle prosequi, but it conferred no power on the court to order a nolle prosequi to be entered without the consent of the prosecuting officer. The legislation of this State and the decisions of the courts construing it indicate no intention to depart from the doctrine of the common

law that a nolle prosequi can only be entered by the prosecuting officer, or with his consent."

Aside from situations in which dismissal of a prosecution is the means by which procedural rights are vindicated,[4] a Pennsylvania court has the power to dismiss a prosecution over the prosecuting attorney's objection only when the legislature expressly empowers it to do so. The prosecutor's authority to veto a proposed diversion stems from his general power, originating at common law and not taken away by the legislature, to decide that a particular case shall proceed to trial. While there are a few situations in which a court possesses legislatively-granted authority to terminate a prosecution before trial, regardless of the prosecutor's wishes, this case does not fall within any of those situations.[5]

The supervisory powers of the Pennsylvania Supreme Court are limited by Article V, § 10(c) of the Pennsylvania Constitution, which grants that Court its procedural rule-making powers but qualifies that grant by stating: "[S]uch rules [must be] consistent with this Constitution and neither abridge, enlarge, nor modify the substantive rights of any litigant." The Court was thus limited to working within the existing framework of separation of powers, and therefore could not create a diversion program without requiring prosecutorial initiative, as the Commonwealth is indisputably a litigant and possesses a substantive right to insist on

**4.** Such as dismissals for: failure to give a defendant a speedy trial, failure to comply with Rule 1100, Pa.R.Crim.P., or violation of the prohibition against double jeopardy.

**5.** For instance: The court may discharge a defendant sua sponte in certain cases where the aggrieved party has a civil remedy and satisfaction has been made to that party. Act of March 31, 1860, P.L. 427, § 9, April 11, 1929, P.L. 514, § 1, May 26, 1949, P.L. 1816 § 1, 19 P.S. 491, procedurally modified by Rules 145 and 315, Pa.R.Crim.P. The court must dismiss a prosecution if it finds that the offense falls into a statutorily defined "de minimis" category. Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S. 312. The court may dismiss a prosecution for conduct charged to constitute criminal attempt, solicitation, or conspiracy, but determined to be so unlikely to achieve its objective that the actor and his conduct may be considered harmless. 18 Pa.C.S. 905(b).

seeking a conviction. It follows that this court cannot do so either. While there is something to be said for allowing a court to overrule a prosecutor and order diversion, it should be said to the General Assembly.

Appellant also asserts that the exclusion of drunken drivers from ARD amounts to a denial of equal protection of the laws. The United States Supreme Court said in *Gulf, C. & S. F. R. Co. v. Ellis*, 165 U.S. 150, 155, 17 S.Ct. 255, 256, 41 L.Ed. 666 (1896):

> "[I]t is said that it is not within the scope of the fourteenth amendment to withhold from states the power of classification, and that, if the law deals alike with all of a certain class, it is not obnoxious to [the equal protection clause]. While, as a general proposition, this is undeniably true, . . . yet it is equally true that such classifications cannot be made arbitrarily. . . . [The classification] must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis." [Citations omitted.]

It is undisputed that appellant was excluded from ARD pursuant to a prosecutorial office policy, concurred in by the court below, against the admission of drunken driving cases to ARD. It is thus clear that the law as administered in Dauphin County deals alike with all members of this class. The question is whether the classification is a reasonable one. Appellant says it is an arbitrary one, arguing that it discriminates among intoxicated persons. He points out that an intoxicated person who is arrested for a misdemeanor or a felony is eligible for ARD, unless the offense is driving an automobile. What he ignores is the fact that our penal statutes are not concerned with intoxication *per se* but with the activities of the person in that condition. A distinction, for example, between an intoxicated burglar and an intoxicated driver is quite logical; intoxicated burglars are no more dangerous than sober burglars, and may be less so, while the abuse of alcohol by drivers renders them extreme-

ly dangerous. Since getting behind the controls of an automobile is probably the most life-endangering thing an intoxicated person can do, at least among commonplace activities, we see nothing unreasonable or arbitrary about treating this group of intoxicated persons differently.

A second facet of appellant's fourteenth amendment claim is his argument that exclusion of drunken drivers from ARD in Dauphin County, but not in other counties, results in a denial of equal protection. Appellant contends, in effect, that residence in a particular county is an unreasonable basis for classification. This argument is answered by *Salsburg v. Maryland*, 346 U.S. 545, 550–51, 74 S.Ct. 280, 283, 98 L.Ed. 281 (1954). The issue there was whether a Maryland statute excepting certain gambling prosecutions in three specified counties from a general prohibition against the admission of illegally obtained evidence violated the equal protection clause. The Court held that it did not, stating:

"We find little substance in appellant's claim that distinctions based on county areas are necessarily so unreasonable as to deprive him of the equal protection of the laws guaranteed by the Federal Constitution. The Equal Protection Clause relates to equality between persons as such rather than between areas. . . . Territorial uniformity is not a constitutional requisite." [Citation omitted.]

The Court referred to *Missouri v. Lewis*, 101 U.S. 22, 31, 25 L.Ed. 989 (1879), where the following was said:

"The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. . . . Each State prescribes its own modes of judicial proceeding. If diversities of law and in judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State."

Of course, *Salsburg* would have to be decided differently today, since one of its premises, that a state has the power to

"choose either the rule which excludes or that which admits illegally seized evidence," is no longer the law. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). But its reasoning is still sound, and has been affirmed as recently as 1973, in *San Antonio School District v. Rodriquez*, 411 U.S. 1, 54, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), where the court said:

"This Court has never doubted the propriety of maintaining political subdivisions within the States and has never found in the Equal Protection Clause any *per se* rule of 'territorial uniformity.'" *Id.* at 54 note 110, 93 S.Ct. at 1307.

We agree with the statement of the United States District Court of the Eastern District of Pennsylvania in *Kaelin v. Warden*, 334 F.Supp. 602, 608 (1971):

"The Constitution does not forbid the state from experimenting by utilizing disparate methods for different counties."

It makes no difference that the classification here is a *de facto* one, resulting from differences in decision-making at the county level rather than being a state-ordained distinction. See *Salsburg*, supra, at 552–53, 74 S.Ct. 280, and *Upsey v. Secretary of Revenue*, 193 Pa.Super. 466, 165 A.2d 267 (1960).

We are not unaware that differences among counties in the treatment of particular types of offenders may breed resentment among the more harshly treated defendants and may contribute to an image of the criminal justice system as one in which decisions are made arbitrarily and inequitably. It may very well be that uniform statewide standards for ARD admission are desirable, but not everything that is desirable is constitutionally required. We refer appellant and those similarly situated to the words of the Supreme Court in *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913):

"To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of govern-

ment are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific . . . What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth Amendment, and such judgment cannot be pronounced of the ordinance in controversy." [Citations omitted.]

As we reach the same conclusion with respect to the program in the instant controversy, the judgment of sentence is affirmed.

HOFFMAN, J., files a concurring opinion.

SPAETH, J., files a concurring and dissenting opinion.

HOFFMAN, Judge, concurring:

I agree with Judge CERCONE'S cogent analysis of the constitutional issues relating to the Accelerated Rehabilitative Disposition ("A.R.D.") program. I believe, however, that appellant's contention that the A.R.D. program constitutes an improper delegation of a judicial function is not properly before us because appellant did not raise this claim before the lower court. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Moreover, counsel for both parties expressly stipulated in the Agreed Statement of Facts that appellant does not challenge the constitutionality of the A.R.D. program itself. Accordingly, I do not believe that we can properly address this issue. *Weigand v. Weigand*, 461 Pa. 482, 337 A.2d 256 (1975).

SPAETH, Judge, concurring and dissenting:

I agree with the majority that the appeal must fail. In my view, however, this is so because the rules that provide for the "accelerated rehabilitative disposition" of a criminal case[1] are unconstitutional as an improper delegation of judicial power to the district attorney.

1. Pa.R.Crim.P. 175–185.

## I  History of the Case [2]

Appellant was arrested and indicted for operating a motor vehicle in Dauphin County under the influence of intoxicating liquor.[3]  After appellant's arraignment but before trial, appellant's attorney asked the district attorney to move that the case be considered for accelerated rehabilitative disposition.  This request was made under Rule 176 of the Pennsylvania Rules of Criminal Procedure, which provides:

> After an information or indictment, the attorney for the Commonwealth upon his own motion or upon request of the defendant's attorney may submit the information or indictment to a judge empowered to try cases on information or indictment, and may move that the case be considered for accelerated rehabilitative disposition.

When the district attorney refused so to move, appellant's attorney filed his own motion, which the lower court ordered the district attorney to answer.  In his answer, the district attorney noted

> that [under Rule 176] the District Attorney "may" move a specific case to be considered for A.R.D.  The rules are not compulsive but allow the District Attorney to exercise his sound discretion.

Answer, para. 7.

The District Attorney said that he had exercised his discretion not to move appellant's case for accelerated rehabilitative disposition for two reasons:

> First, the Dauphin County Court has requested the District Attorney not to submit this type of offense for A.R.D. considerations;  and second, the District Attorney believes that A.R.D. of this type of offense is not in the best interest of the public in light of the ever increasing problem that the drunken driver reeks [sic] upon our society.

---

**2.**  The case comes to us upon an agreed statement of facts.  Record 14a–20a.

**3.**  The Vehicle Code, Act of Apr. 29, 1959, P.L. 58, § 1037, 75 P.S. § 1037.

*Id.*, para. 6.

After briefs and arguments, the lower court sitting en banc denied appellant's motion and directed the district attorney to call the case for trial. In its opinion the lower court held that

> so far as the Rules are concerned the discretion of the District Attorney is absolute. The plain language of Rule 176 provides that the District Attorney "may" move the case to be considered for A.R.D. It would be difficult to find language more clearly intended to give broad discretion to the District Attorney in all situations. Included are those cases where a request comes from the attorney for the defendant. There is nothing in the Rules requiring or even suggesting that the District Attorney must submit or the Court approve any cases of the instant nature for disposition. The Rules authorize, they do not direct.

Record 24a.

Appellant petitioned the Supreme Court either to assume jurisdiction under Section 205 of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.205, or to transfer the record to this court, *id.* § 503(b), 17 P.S. § 211.503(b). On June 2, 1975, the Supreme Court by *per curiam* order denied the petition.

On July 24, 1975, appellant was found guilty by a judge sitting without a jury, and was sentenced to one year probation and a fine of $300 and costs. This appeal followed. The issue raised in appellant's pre-trial motion, that his case should have been considered for accelerated rehabilitative disposition, was preserved at trial and is the only issue before us, for it is agreed that the trial judge committed no error at the trial.[4]

---

4. Appellant has stated the issue in equal protection terms. However, that assumes the validity of Pa.R.Crim.P. 175–185, which is the threshold issue. As I have concluded that the rules are invalid, I never reach the issue of whether appellant has been denied equal protection. I cannot agree with Judge HOFFMAN that the constitutionality of the rules is not before us. Appellant's attack is directed at the District Attorney's power to exclude an accused from acceler-

## II   The History and Nature of the Accelerated Rehabilitative Disposition Program

"Accelerated rehabilitative disposition" is the Pennsylvania name for what is generally called "pretrial intervention" or "diversion." The impetus for the development of diversion programs came from the report submitted in 1967 by the President's Commission on Law Enforcement and Administration of. Justice. The report found that often the criminal justice system not only failed to rehabilitate an offender but made him worse than he had been. It therefore recommended the "[e]arly identification and diversion to other community resources of those offenders in need of treatment, for whom full criminal disposition does not appear required." *Id.* at 134. Such diversion, it was urged, would enable the criminal justice system to deal more efficiently with those offenders who merited criminal sanctions. *See President's Commission on Law Enforcement and Administration of Justice Task Force Report: The Courts,* 4–9.

Within a year of the publication of the Commission's report, two pilot diversion programs were established—the Manhattan Court Employment Project, and Project Crossroads in Washington, D. C. These provided for the diversion of criminal cases involving juveniles, first offenders, and defendants accused of committing misdemeanors and certain specified felonies. In exchange for the suspension of prosecution, an accused was required to participate in a community-based rehabilitation program, which included counseling, training, and job-placement. If this requirement were met, the prosecution would be dropped.

The Manhattan and Washington, D. C., programs have been widely copied, but because of the experimental nature of diversion, great variety has resulted.[5] The Supreme

ated rehabilitative disposition. Since the rules give the District Attorney this power, we cannot decide the case without also deciding the validity, *i. e.,* constitutionality, of the power. Judge CERCONE's opinion recognizes this, and to that extent, I agree with him.

**5.** *See generally* Note, *Pre-Trial Diversion from the Criminal Process,* 84 Yale L.J. 827 (1974). *See also* Pre-trial Diversion, Hearings on

Court of New Jersey has recently summarized the present status of diversion as follows:

These various programs differ in terms of their breadth and their ambition. While a majority of them are comprehensive in scope, others confine their attention to individuals suspected of committing particular crimes. In short, [diversion] programs share a common background, but have assumed no uniform structure. Nevertheless, the success of these programs has encouraged more and more state and local authorities to initiate and develop . . . programs of their own.

*State v. Leonardis,* 71 N.J. 85, 95, 363 A.2d 321, 326 (1976).

The Pennsylvania diversion program was initiated by the adoption of Pa.R.Crim.P. 175–185, which became effective May 24, 1972, with later amendments effective February 15, 1974.[6] Stated generally, the distinctive features of the program are as follows.

As already noted in Part I of this opinion, the district attorney is given the discretion "to move that the case be considered for accelerated rehabilitative disposition." Pa.R. Crim.P. 175–176. Without doubt, the lower court was correct in holding that this discretion was "absolute." Opinion of lower court, *supra.* The rules say that the district attorney "may move that the case be considered." Pa.R.Crim.P. 175–176. Nothing is said about what sort of case it may, or may not, be appropriate for him to move. Moreover, in the comment to Rule 185 it is said that ". . . no attempt has been made in these Rules to specify what cases or classes of cases should be eligible for inclusion in the program." Finally, the rules do not require either that the district

H.R. 9007 and S. 798 Before the Subcomm. on the Courts, Civil Comm. on the Judiciary, House of Representatives, 93d Cong. (1974); Legal Issues and Characteristics of Pretrial Intervention Programs, National Pretrial Intervention Center of the ABA Comm. on Correctional Facilities and Services (1974).

**6.** The rules were based upon a program initiated in Philadelphia under an order of the Supreme Court entered January 6, 1971. *See* Comment, Pa.R.Crim.P. 185. I feel the freer in my ensuing criticism of the rules as I had some part in their formulation.

attorney promulgate standards by which he will decide what sort of case to move, or that he give a statement of his reasons for moving, or not moving, a case.

If, for whatever reasons, stated or unstated, the district attorney does move a case for accelerated rehabilitative disposition, a hearing is held before a judge. Pa.R.Crim.P. 177–179. If the judge concludes that the case "warrants accelerated rehabilitative disposition," Pa.R.Crim.P. 179(c), he "may grant [the district attorney's] motion for accelerated rehabilitative disposition and shall enter an appropriate order," Pa.R.Crim.P. 179(d), postponing criminal prosecution, Pa.R.Crim.P. 180–181, and specifying the conditions of the rehabilitative program that the defendant is to follow, Pa.R. Crim.P. 182 provides:

> The conditions of the program may be such as may be imposed with respect to probation after conviction of a crime, including restitution and costs, and may include other conditions agreed to by the parties, except a fine may not be imposed.

If the defendant satisfactorily completes the program thus prescribed for him, he may have the charges dismissed. Pa.R.Crim.P. 185. If, on the other hand, he refuses to accept the conditions required by the judge, or accepts but violates them, prosecution on the charges proceeds. Pa.R.Crim.P. 183–184.

III   The Validity of Accelerated Rehabilitative Disposition

I agree with those who believe that diversion can be, and often has been, both humane and efficient.[7] I am convinced, nevertheless, that as now constituted, Pennsylvania's program is fundamentally invalid, and that this invalidity carries with it great dangers.

A

Discussion of the validity of diversion usually starts with the premise that diversion is a species of prosecutorial dis-

7.  See note 6, supra.

cretion. This is the premise of the district attorney's argument here. *See* his brief, especially at 9 (". . . the initial decision to submit a case to ARD is another matter rightfully residing within the District Attorney's discretion . . . ."). *See also Shade v. Commonwealth of Pa., Dept. of Transp.,* 394 F.Supp. 1237, 1242 (M.D.Pa.1975) (". . . the ARD program leaves intact the traditional principle that the prosecuting attorney should have discretion to choose which crimes he wishes to prosecute. . . . ").

From this premise the discussion usually proceeds to consider whether in a given case the district attorney has so abused his discretion that the prosecution should be dismissed. Thus appellant argues here that the district attorney has acted arbitrarily. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and the many other cases involving the contention that the proof shows that the law has been "applied and administered by public authority with an evil eye and an unequal hand." *Id.* at 373–374, 6 S.Ct. at 1073. *See, e. g., Edelman v. California,* 344 U.S. 357, 73 S.Ct. 293, 97 L.Ed. 387 (1953); *Snowdon v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943); *Sunday Lake Iron Co. v. Wakefield,* 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1968); *Ah Sin v. Wittman,* 198 U.S. 500, 25 S.Ct. 756, 49 L.Ed. 1142 (1905). *And see generally* Cox, *Prosecutorial Discretion—An Overview,* 13 American Criminal Law Review 383 (1976). This approach is exemplified in *United States v. Smith,* D.C.App., 354 A.2d 510 (1976). There the trial court had dismissed a prosecution because of the government's refusal to participate in a hearing on whether there should be diversion. In reversing, the appellate court said, "[T]he defendant bears a heavy burden of showing that the government's selection of him for prosecution has been based upon some form of invidious or otherwise impermissible form of discrimination, or is arbitrary and capricious." *Id.,* 354 A.2d at 512–13.

Here, the majority has accepted the premise that diversion is a species of prosecutorial discretion. *See* majority opinion at 247 Pa.Super. 103–104, 371 A.2d 1347–1348. The premise is nevertheless quite mistaken; diversion is a judicial decision.

To be sure, if the question is whether to arrest and charge someone, the answer given will be an exercise of prosecutorial discretion, which a court will be wary of undertaking to supervise. *See, e. g., United States v. Cox,* 342 F.2d 167 (5th Cir. 1965), *cert. denied sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). That is not, however, the sort of case that we are concerned with. Here, the prosecutor has already exercised his discretion, with the result that appellant was arrested and charged, and thereafter indicted. The possibility of accelerated rehabilitative disposition does not arise until a defendant has been "held for court," Pa.R.Crim.P. 175, or "[a]fter an information or indictment," Pa.R.Crim.P. 176. When either of these events has occurred, the case has left the prosecutor's realm, and has entered the court's. From the moment of such entry, it is the court's discretion, not the prosecutor's, that controls the ultimate disposition of the case. Thus, to cite the familiar examples: If the district attorney wishes to enter a *nolle prosequi,* "the assent of the proper court in writing [must be] first had and obtained." Act of Mar. 31, 1860, P.L. 427, § 29, 19 P.S. § 492. *And see* Pa.R.Crim.P. 314(a) ("upon application of the attorney for the Commonwealth, the court may, in open court, order a nolle prosequi . . ."), and Pa.R.Crim.P. 225(a) (where the indicting grand jury has been abolished, the district attorney is directed either to "move to nolle prosequi the charges" or to file an information). Similarly, if the district attorney wishes to make a plea bargain, he must do it subject to the court's supervision. See Pa.R.Crim.P. 319(b).

The lower court recognized [8] that accelerated rehabilitative disposition was a judicial, not a prosecutorial, decision. Thus the court said:

ARD is essentially a judicial ascertainment of the method of correction to be imposed by the Court. It adds to the alternatives of imprisonment, fine and post-conviction probation a new choice of pre-conviction probation. Not only have the requirements of probation [been] extended

---

**8.** Although it failed to act on the recognition.

almost to the limits of a Judge's imagination, but the resort to probation as to particular malefactions has a wide range. The present Rules for accelerated disposition must be looked upon as a variation or extension of the use of probation.

Opinion of lower court, Record 27a.[9]

This statement by the lower court is consistent with long-settled principle. Thus in *Commonwealth ex rel. Johnson v. Halloway,* 42 Pa. 446, 448 (1862), it was said that "[t]he trial, conviction, and sentencing of criminals are judicial duties, and the duration or period of the sentence is an essential part of a judicial judgment in a criminal record." More generally, we held in *Commonwealth v. Knox,* 172 Pa.Super. 510, 519, 94 A.2d 128, 132, *aff'd* 374 Pa. 343, 97 A.2d 782 (1953), that "[t]he judicial power is the power which administers justice . . . ."

The most forceful demonstration of the judicial nature of diversion, however, is the full discussion by the Supreme Court of California in *People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1974). In California, diversion is authorized by statute, rather than, as in Pennsylvania, by rules of court. The statute will be more fully discussed below; it is enough for the moment to note that the statute was similar to the Pennsylvania rules in providing that there could be no diversion unless the district attorney assented to it. The trial judge held this provision "unconstitutional as violating the separation of powers—taking power away from the court in the matter of sentencing." *Id.* at 25, 520 P.2d at 409. Accordingly, he ordered diversion despite the district attorney's objection. The district attorney appealed, seeking a writ to compel the trial judge to set aside his order of diversion and to proceed on the criminal charge. The Supreme Court, however, agreed with the trial judge's reasoning, and denied the writ. Said the Court, in words so precisely applicable here that full quotation is warranted:

**9.** *And see* Pa.R.Crim.P. 182(a) ("The conditions of the program may be such as may be imposed with respect to probation after conviction . . . .")

The People contend that the decision to divert is merely an extension of the charging process, and hence remains within the traditional zone of the district attorney's discretion. As we explained in *Esteybar* [*v. Municipal Court,* 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 (1971)], however, "This argument overlooks the fact that the magistrate's determination *follows* the district attorney's decision to prosecute. [Citation omitted.] The statutory scheme is expressly declared applicable when and only when the case is "before any court upon an accusatory pleading" [citation omitted; *note* that the same is true under Pa.R.Crim.P. 175–176; *see* discussion *supra*]. By the time the case goes through the probation investigation and report prescribed . . . and reaches the hearing mandated . . . [citations omitted], the prosecutorial die has long since been cast. The case is "before the court" for disposition, and disposition is a function of the judicial power no matter what the outcome.

We recognized this principle in *[People v.] Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993 (1970),] observing that "When the decision to prosecute has been made, the process which leads to acquittal or sentencing is fundamentally judicial in nature." [Citation omitted.] The People seek to distinguish the present case by asserting that a decision to divert results neither in the defendant's "acquittal" nor his "sentencing," and that a district attorney's refusal to consent to diversion means only that the defendant will go to trial as charged. But this is reading *Tenorio* and the present statute too narrowly.

. . . when the jurisdiction of the court has been properly invoked by the filing of a criminal charge, the *disposition* of that charge becomes a judicial responsibility. It is true that acquittal or sentencing is the typical choice open to the court, but in appropriate cases it is not the only termination. . . .

[The court then discusses probation and civil commitment, and concludes:] The analogy to the program here

in issue is clear: diversion may also be viewed as a specialized form of probation. . . .

. . . the statute provides that if the defendant fails in the rehabilitation prescribed by the court in its order of diversion [footnote omitted] his case will be "referred to the court for arraignment and disposition" as "a regular criminal matter." On the other hand, if the defendant successfully completes the rehabilitation program "the charges shall be dismissed." [Citations omitted; *again note* that the same is true under Pa.R.Crim.P. 183–185.] Under California law [as under Pennsylvania law; *see* Act of Mar. 31, 1860, *supra* ], of course, the dismissal of a formally filed criminal charge is a judicial act which can be performed only by the court. [Citations omitted.]

Thus either of the consequences of the decision to divert is itself an exercise of judicial power.

113 Cal.Rptr. at 25–27, 520 P.2d at 409–11.

The most recent recognition of the fact that diversion is not a prosecutorial but a judicial decision is by the Supreme Court of New Jersey, in *State v. Leonardis, supra.* There the court undertook an extensive historical review of the development of diversion, emphasizing that diversion was conceived, and was to be regarded, as an alternative to the traditional criminal dispositions of imprisonment, parole, or probation. On the strength of this analysis the court held that the decision not to divert a given case was "judicially cognizable." 71 N.J. at 109, 363 A.2d at 334. In support of this holding, the court said, *id.* n. 13:

Our determination in this regard is supported by two recent California cases which interpreted that state's statutory pretrial intervention scheme, in *Cal.Penal Code,* § 1000 *et seq., People v. Reed, supra,* 37 Cal.App.3d 369, 112 Cal.Rptr. 493 (1974); *People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (Sup.Ct.1974). . . . These decisions were based upon the explicit finding that pretrial intervention is a judicial function, in spite of the fact that the California [diversion]

programs, unlike those in New Jersey, are legislative in origin. . . .

It is impossible not to regret the failure of the majority even to cite, much less discuss, *State v. Leonardis,* which is not only directly in point but represents to my knowledge the most recent and comprehensive analysis of the issues presented by diversion, which will be discussed further later in this opinion. As regards the California cases, which the majority does discuss: Contrary to the majority, these cases in no way turn upon some implied peculiar principle of California law to the effect that a California court has the inherent power to dismiss a criminal charge. As appears from the extensive quotation from *People v. Superior Court of San Mateo County, supra,* the Supreme Court of California based its decision there on its recognition of the fact that "diversion may also be viewed as a specialized form of probation", *i. e.,* as within the court's realm, not the prosecutor's. I am reassured in my belief that this is the correct reading of the California decisions by the fact that in *Leonardis* the Supreme Court of New Jersey reads them the same way.

## B

Once it is understood that diversion is a form of sentence and therefore not a species of prosecutorial discretion but a judicial decision, the fundamental invalidity of the rules providing for accelerated rehabilitative disposition becomes plain.

The distinctive features of accelerated rehabilitative disposition have been discussed *ante,* 247 Pa.Super. pages 115–116, 371 A.2d page 1354. As there noted, under the present rules the district attorney is given the absolute discretion to decide whether a case shall or shall not be submitted to the court; he need not state in advance what sort of cases he will consider for possible submission, nor what factors in any given case will weigh for or against submission; nor need he state why he has decided that a given case shall not be submitted. By enacting such rules, the Supreme Court

has in my judgment unconstitutionally delegated to the district attorney the exclusively judicial responsibility of sentencing.

It is of course true that if the district attorney decides to submit a case to the court for consideration, the court is not bound to put the defendant on accelerated rehabilitative disposition. In other words, as to such a case, there is no delegation of judicial power to the district attorney; the court retains its full control of the disposition of every criminal case once prosecution has been started. This fact, however, is beside the point; we are not concerned with such a case. What we are concerned with are those other cases, where the district attorney decides not to submit. As to those cases, the rules give the district attorney the power to control one of the possible dispositions. Simply by deciding not to submit, he is able to preclude diversion. What the rules say to the district attorney is, "If *you* think a defendant should not be put on accelerated rehabilitative disposition, *you* decide; and you don't have to give the court, or anyone, your reasons."

The invalidity of such a delegation of judicial power to the district attorney may perhaps be most readily demonstrated, first, by reference to cases involving the delegation of legislative power, and second, by comparison with diversion in California and New Jersey.

1

A basic principle of our Constitution is that governmental power should be divided among three separate branches: the legislative, Pa.Const. art. II, § 1; the executive, Pa.Const. art. IV, § 2; and the judicial, Pa.Const. art. V, § 1. *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971). A corollary of this principle is that the power of any one of these branches may not be delegated to another. Since the "legislative power" is "vested" in the legislative branch, it may be exercised only by that branch. *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 85, 53 S.Ct. 42, 77 L.Ed. 175 (1932); *Chartiers Valley Jt. Schs. v. Allegheny Co. Bd.*, 418 Pa. 520, 529, 211 A.2d 487, 492 (1965).

Similarly, "[t]he whole judicial power of the Commonwealth is vested in courts. Not a fragment of it belongs to the legislature." *Commonwealth ex rel. Johnson v. Halloway, supra,* at 448.

This does not mean that there may be no delegation at all. "[A] general provision may be made, and power given to those who are to act under such general provisions, to fill up the details." *Wayman v. Southard,* 10 Wheat. (23 U.S.) 1, 41, 6 L.Ed. 253 (1825), Marshall, C. J. Thus in *Chartiers Valley Jt. Schs. v. Allegheny Co. Bd., supra,* 418 Pa. at 529–30, 211 A.2d at 492–493, it is said:

It is generally agreed that the nondelegation principle does not require that all details of administration be precisely or separately enumerated in the statute. "While the legislature cannot delegate power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 342, 54 A.2d 277, 284 (1947); accord, *Pennsylvania Water & Power Resources Bd. v. Green Spring Co.,* 394 Pa. 1, 5, 145 A.2d 178, 180 (1958); *Archbishop O'Hara's Appeal,* 389 Pa. 35, 47, 131 A.2d 587, 593 (1957); *Locke's Appeal,* 72 Pa. 491, 498 (1873). However, legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions. *Archbishop O'Hara's Appeal,* 389 Pa. 35, 47–48, 131 A.2d 587, 593 (1957). *Pennsylvania Water & Power Resources Bd. v. Green Spring Co.,* 394 Pa. 1, 5, 145 A.2d 178, 180 (1958); *Holgate Bros. Co. v. Bashore,* 331 Pa. 255, 200 A. 672, 675 (1938).

In deciding whether the legislation does "contain adequate standards," a court must give the legislature the benefit of the doubt. "If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative.

action is not a forbidden delegation of legislative power." *J. W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928). "[I]ntelligible principle" has been held to include such standards as "just and reasonable," *Tagg Bros. & Moorehead v. United States,* 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930), "public interest," *New York Central Securities Corp. v. United States,* 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 178 (1932), "public convenience, interest, or necessity," *Federal Radio Comm. v. Nelson Bros. Bond & Mortgage Co.,* 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166 (1933), and "unfair methods of competition," *FTC v. Gratz,* 253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993 (1920). *And see Chartiers Valley Jt. Schs. v. Allegheny Co. Bd., supra* 418 Pa. at 538, 211 A.2d at 492.

Nevertheless, "Congress cannot delegate any part of its legislative power except under a limitation of a prescribed standard." *United States v. Chicago, Milwaukee, St. Paul & Pacif. R. Co.,* 282 U.S. 311, 324, 51 S.Ct. 159, 162, 75 L.Ed. 359 (1931). Consequently, where there is no "prescribed standard" at all, where there is nothing to "guide and restrain the exercise" of the delegated power, the delegation must be held unconstitutional. The leading case is *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). There, the National Industrial Recovery Act delegated to the executive branch the power to formulate and prescribe codes of "fair competition" for all industry in order to promote "the policy of this title," which was "to eliminate unfair competitive practices, to promote the fullest possible utilization of the present productive capacity of industries, . . . and otherwise rehabilitate industry . . .." 48 Stat. 195 (1933), Tit. I, § 1. In declaring this delegation unconstitutional, the Chief Justice, writing for the Court, held:

It supplies no standards for any trade, industry or activity. It does not undertake to prescribe rules of conduct to be applied to particular states of fact determined by appropriate administration procedure. Instead of prescribing

rules of conduct, it authorizes the making of codes to prescribe them. . . . [T]he discretion of the President in approving or prescribing codes . . . is virtually unfettered.

*Id.* 295 U.S. at 541, 55 S.Ct. at 848.[10]

These principles are dispositive of the present case. As has been seen: The decision not to divert is an aspect of the judicial power to control the disposition of every criminal case once prosecution has been started. Pa.R.Crim.P. 175–176 delegate that power to the district attorney. In doing so, however, the rules prescribe no standard, "intelligible" or otherwise, to "guide and restrain" the district attorney; his discretion is "virtually unfettered," or, as the lower court said, "absolute." The legislative branch could by statute make no such delegation. Consequently neither may the judicial branch by rules, for the judicial branch has no

10. Although many of the decisions handed down contemporaneously with *Schechter* have fallen into disrepute, that case's forceful condemnation of unconstitutional delegation of powers remains undisturbed.

Recently, the doctrines of separation of powers and unlawful delegation were discussed in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). There, the Court, in a *per curiam* opinion, decided the constitutionality of several provisions of the Federal Election Campaign Act of 1971, Act of Feb. 7, 1972, P.L. 92–225, § 1, 86 Stat. 3, 2 U.S.C.A. §§ 431 *et seq.,* and Act of Oct. 15, 1974, P.L. 93–443, Title IV, 410a, 88 Stat. 1304, 18 U.S.C.A. §§ 591 *et seq.* Although many of the challenges to the Act were based on First Amendment grounds, in one challenge appellants claimed that the method of appointing the seven members of the Federal Elections Commission violated the principle of separation of powers. The Court found that the Appointments Clause of the Constitution, Art. II, § 2, cl 2, had in fact been violated and that Congress had impermissibly assumed powers residing in the President. The Court recognized "the intent of the Framers that the powers of the three great branches of the National Government be largely separate from one another. . . . [b]ut they likewise saw that a hermetic sealing off of the three branches of Government would preclude the establishment of a Nation capable of governing itself effectively." 424 U.S. at 120–121, 96 S.Ct. at 683, 46 L.Ed.2d at 745–746. *See also Youngstown Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); *Springer v. Philippine Islands,* 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845 (1928); *United States v. Ferreira,* 13 How. 40, 14 L.Ed. 42 (1852).

greater power of delegation than the legislative.[11] The rules must therefore fall.

Nor should we regret this conclusion; we should rather welcome it. The doctrines of separation of powers and unlawful delegation derive from the attempt to ensure responsible government. "The separation of powers has probably always been understood by well-informed and dispassionate students as the expression of a general attitude rather than (*sic*) inexorable table of organization. So understood it is a valuable element of our political wisdom." Jaffee and Nathanson, *Administrative Law: Cases and Materials* 34 (1968). Delegation of a judicial function to another branch, without limiting standards, as in Pa.R.Crim.P. 175–185, enables and encourages not responsible but irresponsible government.

Under Pa.R.Crim.P. 175–185, a district attorney's discretion is unfettered; thus he is compelled to make arbitrary choices. His choices will always be arbitrary, no matter how principled he may be, for with no objective standard to guide and restrain him, they must be personal choices; and they may be arbitrary in a far more invidious sense than that.

The rules say that a district attorney "may" decide whether a "case" should or should not be considered by the court for accelerated rehabilitative disposition. Pa.R.Crim.P. 175–176. What kind of "case?" The rules do not say. Having

11. *Accord, State v. Leonardis, supra.* There, while not expressly relying upon the doctrine of unlawful delegation, the court held:

> The second aspect of the overriding problem which we consider in this case concerns the virtually untrammeled discretion which has been vested in prosecutors associated with the [diversion] programs. The broad interstices of [N.J.] *R.* 3:28 have permitted much leeway to prosecutors in the manner in which they administer the enabling court rule. Although we foresee a continued exercise of discretion by prosecutors, we cannot sanction a decisional process which might yield *ad hoc* or arbitrary determinations . . .
>
> To delimit the exercise of discretion and to afford guidance to all prosecutors in reaching their [diversion] decisions, we find that statewide [diversion] programs should be implemented according to uniform guidelines.

71 N.J. at 121, 363 A.2d at 340.

decided—in whatever manner—upon the kind of case (forgeries, for example), how is the district attorney to decide which case should and which case should not be considered by the court? What criteria is he to consider? What fact finding procedure is he to follow to see if these criteria are met? The rules do not say.

Suppose two cases, both of which by any objective standard should be submitted by the district attorney to the court for possible accelerated rehabilitative disposition. As the rules are now, the district attorney may submit both, but he also may submit neither, or only one; and in submitting neither or one he may act without reference to any articulated standards of orderly procedure; on mere hunch; from racial prejudice (the case of the white boy from the "good family" is submitted, that of the black boy from the "poor neighborhood" is not); even from favoritism (he knows the lawyer in one case, not in the other). And he may make these decisions without having to explain them to anyone.

I do not suggest any impropriety on the part of the district attorney in this case. To the contrary, I am sure there was none, for I have participated in bar association matters with the district attorney and know him to be an honorable and conscientious man. Nor do I suggest any criticism of district attorneys generally. The validity of rules, however, must be determined by what the rules do, not by who administers them. Here, what the rules do is to permit a district attorney to act arbitrarily. All of us should do well to be rid of such rules. By permitting arbitrary action, they encourage it. They thereby impede the achievement of justice and add substance to the already widespread belief that in the criminal justice system, not much justice is done.

## 2

A diversion program need not represent an unlawful delegation of power to the district attorney; the decisions of the Supreme Court of California, *People v. Superior Court of San Mateo County, supra,* and the Supreme Court of New

Jersey, *State v. Leonardis, supra,* make plain the requirements that must be met if we are to adhere to the principles enunciated in the cases that have been cited and discussed above. By appropriate amendment, our Supreme Court could conform the Rules of Criminal Procedure to these requirements, as the Supreme Court of New Jersey in *Leonardis* conformed its rules.

The first requirement that must be met is that there be promulgated a definition of what sort of cases may be eligible for diversion. In California, this is accomplished by statute. The statute authorizing diversion provides that it "shall apply whenever a case is before any court upon an accusatory pleading for violation of" certain specified sections of the Health and Safety Code, Penal Code, and Business and Professions Code. Cal.Penal Code § 1000(a). In New Jersey, diversion is authorized by rules of the Supreme Court. Before *Leonardis,* there was no uniform definition of what cases should be considered for diversion; practice varied (as, indeed, it does in Pennsylvania) from county to county. In *Leonardis,* the Supreme Court held that "[d]efendants who have been accused of *any* crime shall be eligible for admission to a program." 71 N.J. at 121, 363 A.2d at 340 (emphasis in original).

The second requirement that must be met is that there be promulgated a statement of the criteria that will be applied in deciding whether there should be diversion of a specific case that falls within the definition of the sort of cases that may be eligible. In California, the statute specifies the criteria: no prior controlled substance conviction; no felony conviction within the past five years; no violence or threatened violence; no probation or parole revocation; and no diversion within the past five years. Cal.Penal Code § 1000(a)(1)–(6). In *Leonardis,* the Supreme Court of New Jersey directed that "uniform and statewide" guidelines be adopted within each County, these to measure a defendant's admissibility to diversion "according to his amenability to correction, responsiveness to rehabilitation and nature of the offense with which he is charged." 71 N.J. at 122, 363 A.2d at 340.

It is instructive to compare these respective statements of criteria with the standards discussed in such decisions as *Chartiers Valley Jt. Schs. v. Allegheny Co. Bd., supra,* and the cases there collected.

The third requirement that must be met is that there be some orderly procedure by which it may be determined whether the specified criteria are satisfied. In California, the statute provides that if the district attorney determines that a given case does not satisfy the criteria, he "shall file with the court a declaration in writing or state for the record the grounds upon which the determination is based, and shall make this information available to the defendant and his attorney." Cal.Penal Code § 1000(b). If the district attorney determines that the case does satisfy the criteria, a further investigation is made by the probation department, which reports its findings and recommendations to the court. *Id.* § 1001.1. In *Leonardis,* the Supreme Court of New Jersey held, after a definitive discussion of the authorities, 71 N.J. at 116–119, 363 A.2d at 337–39, that

a statement of reasons for denial of consent by a prosecutor should ordinarily be afforded to all applicants for admission to a [diversion] program. When furnishing reasons to defendant would be unduly prejudicial to law enforcement efforts, for example, by requiring the revelation of confidential or sensitive information, from an informant, the prosecutor may apply to the designated judge for an *in camera* hearing. At this hearing, the prosecutor would be required to present justification for his reluctance or refusal to state reasons. The judge would thereafter determine whether the State's interest sufficiently outweighed the interest of the defendant in obtaining a statement of reasons.

*Id.* at 119, 363 A.2d at 339; and *see also* at 120, 363 A.2d at 340–41.

The fourth, and last, requirement that must be met is that there be a hearing before a judge, who shall decide whether the defendant shall be accepted or rejected for diversion. As has been discussed, this decision is judicial in nature and

therefore must be the judge's alone. In California, the statute as enacted in 1972 provided that the court could not order diversion over the district attorney's objection. In *Superior Court of San Mateo,* this provision was held violative of the doctrine of separation of powers. Accordingly, when the statute was re-enacted and amended in 1975, the provision was omitted. In *Leonardis,* the Supreme Court of New Jersey held that while there must be a hearing before a judge, because of the nature of the diversion decision the hearing did not have to be "a trial-type proceeding" but could be "an informal hearing," followed by "the procedural protection of a statement of reasons after each determination of [the defendant's] admission, rejection or continuation in a [diversion] program." 71 N.J. at 122, 363 A.2d at 340.

From this enumeration it will be seen that none of the four minimum requirements of a lawful diversion program is met by the Pennsylvania rules. If the district attorney moves a case for consideration under Pa.R.Crim.P. 175 or 176, the fourth requirement is partly met: there is a hearing before a judge. Pa.R.Crim.P. 178–179. However, there is no requirement that the judge give a statement of his reasons for ordering that the defendant be accepted, or that he not be accepted, into accelerated rehabilitative disposition. If the district attorney does not move the case, then none of the four minimum requirements is met, to any extent.

## IV  Conclusion

The foregoing reasoning leads me to the same conclusion as the majority's so far as the disposition of this appeal is concerned. The majority finds nothing wrong with the accelerated rehabilitative disposition program, and concludes that appellant cannot complain of not being accepted into the program. I agree that appellant cannot complain of not being accepted, but my reason is that the program he wants to be accepted into is fundamentally invalid. I regret this conclusion, for I believe that diversion can be both humane and efficient; it must, however, be constitutional. I re-

spectfully express the hope that our Supreme Court will make it so by an exercise of its supervisory powers comparable to the exercise by the Supreme Court of New Jersey in *State v. Leonardis, supra.*

I therefore dissent from the majority's reasoning but concur that the judgment of sentence should be affirmed.