Mayor and Aldermen of Chattanooga *v.* Hugh Keith.

(*Knoxville.* September Term, 1905).

**CONSTITUTIONAL LAW.** Statute denying appeal from city court judgments not exceeding ten dollars is not unconstitutional.

A clause in the legislative charter of a city, providing that in "all civil cases in which the fine imposed does not exceed ten dollars, the judgment of the city court shall be final, and no appeal shall lie therefrom," is constitutional and valid.

Constitution cited and construed: Art. 6, secs. 1 and 2.

Cases cited and approved: Martin, Ex parte, 5 Yer., 456; Sherer v. Lasson Co., 94 Cal., 354; People v. Richmond, 16 Colo., 274; Branson v. Studebaker, 133 Ind., 460; Dismukes v. Stokes, 41 Miss., 430.

FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County. —M. M. Allison, Judge.

George W. Chamlee, for Chattanooga.

Doughty & Titus, for Keith.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The only question in this case is as to the constitutionality of a clause in the charter of the city of Chattanoga, which is as follows: "In all civil cases in which the fine imposed does not exceed $10, the judgment of the city court shall be final, and no appeal shall lie therefrom."

The authorities agree that the remedy by appeal was unknown to the common law and was only employed for the review of cases of equity, ecclesiastical and admiralty jurisdiction; writ of error was the remedy to review judgments of the common pleas and other inferior courts of record when the proceedings were according to the course of common law. 4 Archibald Pr., 4; *Wiscart* v. *Dauchy,* 3 Dall. (U. S.), 321. Consequently the remedy by appeal in actions at law is altogether of constitutional or statutory origin. 2 Cyc., pp. 507-517.

So, the authorities hold that where the constitution does not define the specific limits of appellate jurisdiction, this may be abriged or extended by the legislature as public policy may require; but it has been held, and we think properly, that even in the absence of legislative provision, the establishment of an appellate court by the constitution is an implied declaration that some right of appeal exists which cannot be unreasonably restricted by statute law. 2 Encyc. Pl. & Pr., 14. Illustrating the first proposition in the above paragraph is the case of *Sherer* v. *Lasson county,* 94 Cal., 354, where it was ruled that a constitutional provision, that the appellate juris-

diction of the supreme court shall extend to cases aris-
ing in the inferior courts, restricts that jurisdiction to
the mode and extent prescribed by the legislature; and,
as authority for the last proposition therein contained,
are the cases of *People* v. *Richmond,* 16 Colo., 274, and
*Branson* v. *Studebaker,* 133 Ind., 460, in which is held
that from the establishment of an appellate court it is
to be implied there shall be a review to a reasonable ex-
tent of the judgment of inferior tribunals, and that the
right of appeal must be reserved for the supreme court,
at least in cases involving legal questions of great public
importance.

The constitution of the State of Mississippi did not,
save in most general terms, fix the jurisdiction of the
supreme court. The provision of that constitution
conferring this jurisdiction was as follows: "The
supreme court shall have such jurisdiction as prop-
erly belongs to the court of appeals." The question of
the right of appeal under this clause was considered by
the supreme court of Mississippi in *Dismukes* v. *Stokes,*
41 Miss., 430. In the course of the opinion delivered in
that case, it was said: "The subject is one depending
on general considerations of public policy which for the
most part must be determined by the legislature, subject
to such restriction on their general powers as are con-
tained in the constitution. For this reason, by univer-
sal acquiescence, the power is conceded to the legisla-
ture to prescribe the form of action and the modes of
procedure in courts, and to limit the case and the extent

to which certain remedies may be pursued. The only exception to this power is where specific rights are secured to a party in the constitution with a remedy indicated for their protection, in which case the right and remedy thus guaranteed would be beyond the legislative power. But generally all these questions pertain to the remedy, and are subject to the power of the legislature. The right to prosecute a writ of error or an appeal in this, or any inferior court, is a matter pertaining to the mode of judicial procedure or remedy. It is not guaranteed as a matter of right in the constitution, and though it is possible that this court, in the light of judicial procedure in England, . . . from whose jurisprudence our system is mostly derived, might, in the absence of legislative enactment on the subject, be disposed to favor the right when sanctioned by established precedent, yet, when the legislature has passed laws regulating the mode of proceeding, and limiting the cases and the courts in which the right may be exercised, the rules prescribed must be followed because they are clearly such as the legislature had power to enact. Nothing appears to be more clearly within the legislative power over matters pertaining to public than the question, in what cases and in what courts shall a party be entitled to an appeal or writ of error? In such case, the question to be settled is whether or not it would best promote the purposes of justice and the peace and quiet of the community to allow a matter once or twice regularly adjudicated in the courts to be further litigated in other courts; and this

question depends not upon matter of legal right, but upon considerations of public policy. It turns upon the grave question, at what point should litigation in particular cases cease, and what rule in relation to a particular case would best promote the public good? Where the legislature determines this question and fixes the rule in any particular case, the question is thereby settled . . . ."

Certainly there is very great force in these suggestions. It would seem, in the absence of a constitutional provision defining the limits of appeal, that it should be left, in the interest of the public at large, to the legislature to determine how far dissatisfied litigants should be permitted to carry their causes through the various courts. In such cases, as is the present, where a trial, according to the form of the common law, is given in a court of competent jurisdiction, resulting in an insignificant judgment, public policy would seem to dictate the wisdom of making such judgment final. In our cities, particularly, many ordinances are passed looking to the comfort and health of their citizens as well as to the good order of society, the infraction of which is visited by the infliction of small penalties, and if appeals were tolerated from minor judgments, the superior courts would be crowded to overflowing, and the cost of such litigation would be greatly increased. We think that legislation, such as is here impeached, is dictated by a wise public policy, and unless it does run counter to some clause of the constitution of our State, it should be

upheld. We are satisfied, upon an examination, there will be found nothing in it to defeat this legislation. The only parts of the constitution which bear upon the present question are sections 1 and 2 of article VI. The first of these sections reads as follows: "The judicial power of this State shall be vested in one supreme court, and in such circuit, chancery and other inferior courts as the legislature shall from time to time ordain and establish; in the judges thereof, and in the justices of the peace. The legislature may also vest such jurisdiction in corporation courts as may be deemed necessary . . . ."

Sec. 2 provides that "the supreme court shall consist of five judges, of whom not more than two shall reside in any one of the grand divisions of the State . . . . The jurisdiction shall be appellate, under such restrictions and relations as may from time to time be prescribed by law. . . . ."

It will be observed in these sections there are fixed no definite limits of the right of appeal. While it is true the establishment of inferior tribunals with a supreme court of review implies, as has already been stated, the right of appeal on the part of litigants within reasonable bounds, yet, both in the matter of restriction and regulation of that right, the constitution leaves it to the wisdom of the legislature, or the ruling of the court. As early as the case of *Andrew L. Martin, ex parte,* 5 Yerger, 456, it was held, even without the aid of the statute, that an appeal in the nature of a writ of error would

115 Tenn.—38

not lie from a judgment of an inferior court punishing one for contempt. This ruling was affirmed in numerous cases thereafter, and while some or all these cases involved the right of personal liberty, yet it was never suggested by the counsel seeking to have such judgments revised, that to deny the right of review was to deprive the party of the protection of the constitution. So in habeas corpus cases, it was uniformily held that there was no appeal from judgments rendered therein until this right was given in chapter 157 of the Acts of 1887. Again, we have a striking illustration of the power of the legislature to narrow, or abridge appeal, in the statute organizing the court of chancery appeals. That court by this statute is made the final arbiter of the facts involved in the controversy. It may be in a particular case, that the inferences of fact drawn by that court are unwise, yet they are conclusive upon the litigant and there is left open to him, when dissatisfied with the decree of that court, only the right to have examined, upon appeal or writ of error to this court, the questions of law which arise upon that court's finding of facts.

This statute, though severely arraigned as to this featrue, in the earlier days of that court, was held, after a careful consideration, to be constitutional, and from that time to the present no one has challenged the conclusiveness of the finding of facts by that court.

If it be true that the legislature had the right to stop all litigation, however important it might be, so far as the facts were concerned in an intermediate court, as is

Chattanooga v. Keith.

the court of chancery appeals, then certainly within constitutional limits it could say that from small judgments, such as is in question in the present case, there shall be no appeal.

We entertain no doubt as to the constitutionality of this provision in the charter of Chattanooga, and the circuit judge was in error in holding otherwise. His judgment is, therefore, reversed. The cost of the cause will be paid by the defendant in error.