Edward A. DEARBORNE, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Aug. 28, 1978.

Rehearing Denied Oct. 9, 1978.

Robert E. Burch, White, Regen & Burch, Dickson, for petitioner.

Brooks McLemore, Jr., Atty. Gen., David L. Raybin, Robert L. DeLaney, Asst. Attys. Gen., Nashville, W. B. Lockert, Jr., Dist. Atty. Gen., Ashland City, J. Kenneth Atkins, Asst. Dist. Atty. Gen., Dickson, for respondent.

## OPINION

HENRY, Chief Justice.

In this criminal action, wherein we have granted certiorari to the Court of Criminal Appeals, we attempt to clarify the practice and procedure governing the availability of the common law writ of certiorari (1) to review the interlocutory action of the Court of Criminal Appeals in declining to entertain the common law writ to a trial court and (2) its availability in any appellate court to review the action of a trial court in an interlocutory holding.

### I.

### History of the Lawsuit

Petitioner made a pre-indictment application to the District Attorney General for pre-trial diversion pursuant to § 40–2105, et seq., T.C.A. Upon its denial, a petition for certiorari was filed pursuant to § 40–2108, T.C.A. When that petition was denied by the trial court, petitioner prayed for and was granted an appeal to the Court of Criminal Appeals.

The State moved to dismiss the appeal, contending that it was interlocutory and that such appeals do not lie in criminal cases. The Court of Criminal Appeals sustained the State's motion; however, it entered an order "treat[ing] the pleadings as a petition for certiorari" and setting the case for hearing before another panel of that Court.

Thereafter, a second panel of the Court of Criminal Appeals held that "certiorari was improvidently granted [there being] no provision in the statutes of this state for an appellate review for an Interlocutory Order entered in a criminal case."

The petitioner then presented his petition for the common law writ to this Court and assigned errors allegedly committed by the Court of Criminal Appeals. Thus, we have a petition for common law certiorari to the Court of Criminal Appeals to review the action of that Court in denying the common law writ.

### II.

### May the Supreme Court Entertain Petition for Common Law Writ to Review the Denial of the Common Law Writ

This precise question came before this Court in *Cole v. State*, 223 Tenn. 20, 442 S.W.2d 246 (1969). There the trial Court overruled a plea in abatement to the indictments and petitioner sought review by petition for certiorari filed in the Court of Criminal Appeals. That Court denied the writ; whereupon, petitioner filed his petition in this Court for the common law writ. Mr. Justice Humphreys wrote for a unanimous court:

> While it is true as argued the writ of certiorari inheres in our common law system and has constitutional protection and sanction, Tennessee Constitution, Article 6, § 10; *Conners v. City of Knoxville*, 136 Tenn. 428, 189 S.W. 870; *Clements v. Roberts*, 144 Tenn. 129, 230 S.W. 30, it is also fundamental that the jurisdiction of this Court is what the legislature declares it to be. Tennessee Constitution, Article 6, § 2; *Hundhausen v. U. S. Marine Fire Ins. Co.*, 52 Tenn. 702, 703; *Chattanooga v. Keith*, 115 Tenn. 588, 94 S.W. 62; *Memphis Street R. Co. v. Byrne*, 119 Tenn. 278, 104 S.W. 460. So that while the common law and constitutional power of certiorari inheres in this Court at the common law and resides here under the

Constitution, it must be exercised in accordance with the legislative mandate as long as that mandate does not frustrate and render impotent the constitutional purpose and function of this Supreme Court.

With respect to this the legislature has by T.C.A. § 16–451, provided that judgments of the Court of Criminal Appeals are final judgments which may be reviewed by this Court only by certiorari. (T.C.A. § 16–451), and (T.C.A. § 16–452). No provision is made for this Court to review interlocutory orders of the Court of Appeals made with reference to interlocutory orders of a trial court. (Footnotes omitted.) 223 Tenn. at 22–23, 442 S.W.2d at 247.

Had there been no further pronouncements this would have settled the law. However, three years later the Court, without even alluding to *Cole*, reached a contrary conclusion in *State v. Dougherty*, 483 S.W.2d 90 (Tenn.1972). The procedural background was that the trial judge had granted the defendant's motion for the discovery of certain evidence. The State sought review in the Court of Criminal Appeals by common law writ. When the Court of Criminal Appeals denied the writ, a petition was filed in this Court. The defendant moved to dismiss "on the ground this Court has no jurisdiction to review an interlocutory order of the Court of Criminal Appeals." 483 S.W.2d at 91–92. Responding to this insistence, the Court said:

> However, we are of the opinion the Court of Criminal Appeals acted arbitrarily and illegally in dismissing the petition.
>
> Therefore, the writ of certiorari issuing herein is referable to T.C.A. Section 27–801 which authorizes that writ in cases where an inferior tribunal "has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." (Citations omitted.) 483 S.W.2d at 92.

The Court, accordingly, granted certiorari and remanded to the Court of Criminal Appeals.

If this case left any doubt that the Court had departed from *Cole*, it was removed by our recent opinion in *Whitwell v. State*, 520 S.W.2d 338 (Tenn.1975). There a defendant, who had undergone a criminal trial at the conclusion of which the trial court had declared a mistrial, filed a motion seeking a judgment of not guilty based upon his insistence as to the meaning and effect of the jury verdict.

The trial judge denied the motion. Whitwell filed his petition for the common law writ in the Court of Criminal Appeals, where a divided court held "that the writ of certiorari is not available to review said order of the trial judge; that the trial judge was not acting illegally, nor beyond his jurisdiction." 520 S.W.2d at 341.

We granted certiorari, reversed the Court of Criminal Appeals and remanded to the trial court for the entry of a judgment dismissing all charges. Our holding that the trial court was guilty of a "fundamental illegality," was based largely on *McGee v. State*, 207 Tenn. 431, 340 S.W.2d 904 (1960).

It is apparent from these two cases that *Cole v. State* should no longer be considered to be authoritative. Where the conditions of the statute (§ 27–801), as construed by our decisional law, are met, this Court has the discretion to entertain a petition for the common law writ to review the action of the Court of Criminal Appeals in granting or denying such a writ.

### III.

### *Approved Practice*

Notwithstanding the above conclusions, we think the proper practice is to petition the Court of Criminal Appeals for the writ and, upon its denial, to petition this Court for the writ, assigning as error the *action of the trial court*, and reciting fully the fact of the filing of the former petition and the action taken thereon by the Court of Criminal Appeals.

The procedure is governed by Rule 10 of this Court and we emphasize that all petitions for the common law writ must be "accompanied by an assignment of errors,

and a brief [conforming to Rules 14 and 15] and a certified transcript of the record."

■ The phrase "certified transcript of the record", as used in this rule means (a) the technical record certified by the Clerk and (b) a transcript of the testimony certified by the court reporter or agreed upon by counsel. The solemnities surrounding a Bill of Exceptions have no application. In the event of a controversy between counsel as to the accuracy of the transcript so certified, the conflict will be resolved by the trial judge.

■ Certiorari is not a writ of right. To invoke the discretionary jurisdiction of this Court, there must be strict compliance with these rules.

## IV.

### Pre-trial Diversion

In our recent case of *Pace v. State*, 566 S.W.2d 861 (Tenn.1978), we upheld the constitutionality of our pre-trial diversion statutes, § 40–2105, T.C.A.

Implicit in that holding and self-evident from the statutes is the notion that they create a *statewide* statutory scheme for the diversion of certain classes of offenders from the normal criminal process.

The judgment entered in this case in the trial court recites in pertinent part:

That Attorney General's office has no facilities within said office to enforce the provisions of T.C.A. § 40–2105.

That the provisions of T.C.A. § 40–2105 cannot be implemented in Dickson County through existing facilities.

That the defendant is qualified for the program and should be granted pre-trial diversion if the facilities were available.

■ The judgment shows on its face that petitioner is not being given the benefit of the "law of the land" provision of our state constitution, Article I, Sec. 8. This provision is synonymous with the "due process" clause of the Fifth and Fourteenth Amendments to the Constitution of the United States. *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739 (1965).

This conclusion, however, assumes the applicability of our pre-trial diversion statutes, *prior to indictment*. This determination requires an analysis of the statute in the light of our historic concept of separation of powers and forces us to focus upon the nature of the office of District Attorney General. The concurring opinion in *Pace* discusses this matter in some detail and concludes that "the District Attorney General is an officer of the executive department." 566 S.W.2d at 866. It further focuses on the nature of the prosecutorial discretion vested in the District Attorney General. In this regard the concurring opinion reads as follows:

He or she is answerable to no superior and has virtually unbridled discretion in determining whether to prosecute and for what offense. No court may interfere with his discretion to prosecute, and in the formulation of this decision he or she is answerable to no one. In a very real sense this is the most powerful office in Tennessee today. Its responsibilities are awesome; the potential for abuse is frightening. Indeed, as an incident of separation of powers, the courts may not interfere with the discretion of the District Attorney in their control over criminal prosecutions. See *United States v. Cox*, 342 F.2d 167, at 171 (5th Cir. 1965).

This prosecutorial discretion is deeply rooted in the common law and is a vital part of our common-law tradition. But this discretion has its outer limits. When the charging process—in this state the indictment—has been completed, the disposition of the charge becomes a judicial function.

Under Tennessee law prior to the adoption of the pre-trial diversion statutes, there were two basic methods for the termination of a criminal prosecution, viz:

a) by verdict or judgment

b) by the entry of a *nolle prosequi*.[4]

[4] The entry of a nolle, of course, does not bar further prosecution under a new indictment. *State ex rel. Hobbs v. Murrell*, 170 Tenn. 152, 93 S.W.2d 628 (1936).

Pre-trial diversion is a third method of termination; but it is obvious that it is not a termination pursuant to a finding of guilt or innocence. It does, however, partake of the nature of a *nolle prosequi.* Therefore, it is appropriate that we examine the nature of the District Attorney General's involvement in cases wherein a criminal case is nolled.

As is pointed out in *Commonwealth v. Kindness,* 247 Pa.Super. 99, 371 A.2d 1346 (1977):

> The authorities are virtually unanimous that the historical power to *"nol pros"* belonged at common law solely to the Attorney General and remains an exclusive prosecutorial power in the absence of a state constitutional or statutory provision to the contrary. 371 A.2d at 1349.[5]

[5] In *Kindness,* the Court quotes from a Texas case as follows: "How firmly the rule vesting the exclusive power in the prosecuting officer to dismiss a case was established at common law is forcibly and effectively illustrated in a conversation relating to the commitment for seditious language of certain persons belonging to a sect called 'Prophets.' Lacy, one of the friends of the prisoners committed, assumed to intercede for them, and upon his conference with Lord Holt the following colloquy is reported:

"Lacy: 'I come to you, a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for Mr. Atkins, His servant, whom thou hast cast into prison.' Chief Justice Holt: 'Thou art a false prophet, and a lying knave. If the Lord God had sent thee, it would have been to the Attorney General, for He knows that it belongeth not to the Chief Justice to grant a nolle prosequi, but as Chief Justice, I can grant a warrant to commit thee to bear him company.' 2 Campbell's Lives of the Chancellors, 173."

This firmly entrenched common-law rule has been abrogated in Tennessee. Sec. 40–2101, T.C.A., provides:

> After indictment found, no criminal prosecution can be dismissed, discontinued or abandoned without leave of the court.

In *State v. Costen, supra,* [*State v. Costen,* 141 Tenn. 539, 213 S.W. 910] this Court, citing 12 Cyc. 374, defined a *nolle prosequi* as being

> a formal entry of record by the attorney-general by which he declares that he will no longer prosecute the case. 141 Tenn. at 545, 213 S.W. at 911.

After so defining it the Court stated:

> The judge has no participation in it, *except to give his consent to such order,* and permit its entry upon the record. We are not unmindful of the fact that this power has been exercised by the attorneys-general in this State for many years, but the right to so exercise it is not conferred by the Constitution. The legislature, therefore, has the power to take it away, and when it does so it is not an interference, in a constitutional sense, either with the judicial power of the State, or the ministerial duties of the attorneys-general. With the policy of the statute neither we nor the attorneys general have anything to do. It is a plain mandate of the legislature to which we must all bow. (Emphasis supplied). 141 Tenn. at 545, 213 S.W. at 911.

It is obvious under Sec. 40–2101, T.C.A., and *Costen* that when a criminal prosecution has gone beyond the charging stage, that is to say, after indictment is returned, the matter has left the domain of the prosecutor and has entered into the realm of the court. See also *State ex rel. Hobbs v. Murrell,* 170 Tenn. 152, 93 S.W.2d 628 (1936). This case is authority for the general proposition that a conditional nolle may be entered and does not become final until the condition is performed. See also 22A C.J.S. *Criminal Law* § 461 (1961). Again the similarity between a nolle and pre-trial diversion is evident.

We approve these conclusions as set forth in the concurring opinion in *Pace.*

We hold that pre-trial diversion is not a mere extension of the charging process. The statutory scheme may not be invoked until after indictment.[1] The plan of

1. Prior to indictment the District Attorney General may, in his sole and unreviewable discretion, sponsor an informal pre-trial program, but such a program would have no statutory sanction.

diversion, or the denial thereof, *follows* indictment and comes after the prosecutor has fully discharged all discretionary functions and after the prosecutorial die has been cast. Once committed to the prosecution, the case is before the Court for disposition. Until that time the trial judge is without jurisdiction and the matter is exclusively within the domain and discretion of the District Attorney General.

The statutory scheme of pre-trial diversion does not make it entirely clear that this program does not come into play until after indictment, but this inheres in the very nature of the process. It is judicial in character in that it involves a procedural alternative to prosecution and a disposition by normal methods.

If the statute be construed so as to apply before indictment, the result would be an unwarranted invasion of the authority and power of the District Attorney General, an executive officer, whose prosecutorial discretion may not be abridged during the charging process, i. e. prior to indictment.

The result is that petitioner was not eligible for pre-trial diversion.

We affirm both the trial judge and the Court of Criminal Appeals but only as to results. This action is remanded to the Circuit Court at Charlotte. Should the petitioner be indicted, he is at liberty to seek to invoke the pre-trial diversion statute, and, at that time, the trial judge may want to reconsider whether Dickson County has the facilities to service this form of pre-trial probation of the petitioner, who "should be granted pre-trial diversion if the facilities were available."

Affirmed and remanded.

FONES, COOPER, BROCK and HARBISON, JJ., concur.

OPINION ON PETITION TO REHEAR

HENRY, Chief Justice.

On petition to rehear the petitioner asserts that we overlooked the fact that he had already been indicted; however, he concedes that "[N]o indictment appears in the Technical Record."

 We decide cases and controversies on the basis of the record as presented to us for our consideration, and not as they might, or should, have been presented.

The petition is respectfully overruled.

If, in point of fact, petitioner has been indicted, the end result is that petitioner may invoke the pre-trial diversion statute, either by further action under the pending petition, or by new petition, and the matter will stand for consideration by the trial judge, guided by the views and holdings as set forth in our original opinion.

FONES, COOPER, BROCK and HARBISON, JJ., concur.