# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. KEVIN LEE PENNELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-T-515      Steve R. Dozier, Judge**

---

**No. M2001-01863-CCA-R3-CD - Filed April 28, 2003**

---

The defendant was found in criminal contempt of court for violating a court order by operating a motor vehicle after his driving privileges had been lost for one year, and received a ten-day jail sentence. He raises two issues on appeal: (1) whether a trial judge can revoke a Tennessee driver's license; and (2) whether he was in contempt for driving his vehicle the same day and after he had lost his license. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. DAVID H. WELLES, J., filed a dissenting opinion.

V. Michael Fox, Nashville, Tennessee, for the appellant, Kevin Lee Pennell.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kristen K. Shea, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On September 20, 2000, the defendant was indicted for DUI and violation of the implied consent law, Tenn. Code Ann. § 55-10-406, for refusing to submit to a blood-alcohol test. Although he was acquitted of the DUI charge by a Davidson County jury on June 12, 2001, the defendant conceded that he had violated the implied consent law. The judgment for this offense states that "Defendant is found to have violated the implied consent law with a loss of license for one year."

That same afternoon, Assistant District Attorney General David Vorhaus witnessed the defendant operating his pickup truck in front of the courthouse. Although General Vorhaus was not involved in the defendant's case, he was familiar with him because he was present in court for the

return of his verdict and the following implied consent hearing, which occurred approximately one-half hour before the sighting. General Vorhaus testified that, as he made eye contact with the defendant, who was driving his truck in front of the courthouse, "he seemed to put his head down" as it was "very clear" that they recognized one another.

On June 18, 2001, the trial court entered an order requiring the defendant "to show cause why he should not be held in contempt of court for his failure to comply" with the court's previous order suspending his driving privileges. Following a June 27 hearing, the trial court found the defendant in contempt for willful disobedience of the court's order and sentenced him to ten days in jail, explaining:

> Based on the proof that I've heard here today – which is unrebutted, so I find that there is sufficient proof beyond a reasonable doubt to find that [the defendant] was driving soon after he had – his license and driving privileges had been suspended by the Court.
>
> . . . .
>
> In terms of your driving privileges, if there was any misunderstanding on your behalf, your driving privileges are suspended. Do not drive. I'm ordering that you do not drive.
>
> Your license are [sic] still back here on my secretary's desk, and your privileges are suspended for a period of twelve months from June the twelfth of two-thousand-one. That order will still be in effect.

## ANALYSIS

### I. Suspension of Driver's License

Relying upon Opinion No. 98-125 of the Tennessee Attorney General, the defendant argues that a trial court cannot "revoke a Tennessee Drivers License." That opinion, explaining the mechanics of revocation of a license following a DUI conviction, provides that "[t]he entry of an order by a trial court finding a person guilty of driving under the influence does not constitute revocation of that person's driver [sic] license. However, upon receipt of a record of conviction for driving under the influence, the Department of Safety shall revoke a person's driver [sic] license per Tenn. Code Ann. § 55-50-501(a)(2)." Tenn. Op. Att'y Gen. No. 98-125 (July 20, 1998). Further, its author opines that "[t]he 'revocation' of the driver [sic] license of a person who is convicted of driving under the influence takes effect when the Department of Safety issues a notice of revocation." Id. This analysis seems to be consistent with the DUI penalty statute, Tenn. Code Ann. § 55-10-403(a)(1) regarding the authority of a trial court as to driving privileges, which provides that, following a conviction, "the court shall prohibit such convicted person from driving a vehicle in the

state of Tennessee for a period of time of one (1) year." The opinion, in fact, notes the distinction between a trial court's prohibiting a person convicted of DUI from driving and the Department of Safety's suspending the person's license.

In the judgment which is the basis for the present appeal, however, the trial court did not purport to revoke the defendant's license. Rather, it ordered a one-year "loss of license." Although we note that during the contempt hearing, there was much discussion as to whether this was a revocation or suspension, the judgment utilizes neither of these words, ordering, instead, that for the next year, the defendant had lost his driver's license, which he apparently surrendered to the court at that time. The dispute as to whether the trial court's action was a revocation or a suspension may have been prompted by an amendment to the implied consent statute near the time of this matter. At the time of the defendant's violation, Tennessee Code Annotated section 55-10-406(a)(3) provided, in pertinent part, that, upon a violation of this statute, "the court shall suspend the license of such driver for a period of twelve (12) months." (emphasis added). However, this statute was amended, effective July 1, 2000, to provide that, following a violation of the statute, "the court shall revoke the license of such driver." (emphasis added).

In State v. Michael Ray Swan, No. M2000-00539-CCA-R3-CD, 2001 WL 430601, at *9 (Tenn. Crim. App. Apr. 27, 2001), the trial court revoked the defendant's license for one year for violating the implied consent law, the judgment form ordering that the defendant's license was "revoked one year." In Swan, we explained that, although the words "suspended" and "revoked" are often used interchangeably, they have different meanings based on their statutory definitions:

> "'Revocation of driver license' means the termination by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the department after the expiration of at least one (1) year after date of revocation.
>
> . . . .
>
> 'Suspension of driver license' means the temporary withdrawal by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which temporary withdrawal shall be for a period specifically designated by the department. . . ."

Id. at *9 (quoting Tenn. Code Ann. § 55-50-102(42), (47)). Swan concluded that it was "likely that the trial court intended only to suspend the defendant's driver's license because it followed the term 'revoked' with the phrase, 'for one year'" and amended the trial court's judgment to provide for a one-year suspension for the implied consent conviction. Id.

The issue before us is whether the trial court had the authority to suspend the defendant's driver license on June 12, 2001, and clearly it did. See Tenn. Code Ann. §§ 55-10-403(a)(1), -406(a)(3); see also State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995) (holding that the court is required to suspend a driver's license for the time required by statute upon a finding that the driver violated the implied consent law).

Accordingly, we conclude that the trial court, as it was authorized to do, ordered at the morning hearing the suspension of the defendant's license and that such order was effective beginning at that time.

## II. Contempt of Court

The defendant argues on appeal that the trial court improperly found him in contempt of court. Noting that the records of the Tennessee Department of Safety showed that, as of June 12, 2001, the day that his driving triggered the State's show cause motion, his driver's license was still valid, the defendant asserts that "[t]here is no court order in the record prohibiting [him] from driving," and that "[t]he only order in the record orders 'loss of license for one year.'"

We agree with the defendant's arguments regarding the status of his driver's license as of June 12, 2001, and the wording of the judgment. However, these arguments ignore the trial court's orders to the defendant at the conclusion of the hearing the morning of June 12, when he surrendered his driver's license to the court. The accounts disagree as to the court's instructions to the defendant. According to the affidavit of Assistant District Attorney General David G. Vorhaus, which apparently was attached to the show cause motion, "[t]he Court ordered the defendant to turn over his license immediately and instructed the defendant that his license was revoked and . . . he could not drive unless the court granted him a restricted license." The defendant responded in his motion to dismiss the show cause order that "a thorough review of the transcript of proceedings reveals that the Court made no such statement nor issued any such order." We cannot determine which of these claims is correct, for the record on appeal does not contain a transcript of the hearing at which the defendant surrendered his license and was instructed as to his future driving.

We note that at the contempt hearing, the following exchange occurred between the trial court and counsel for the defendant:

> THE COURT: If I tell a person his license [is] suspended, don't be driving, and that person drives, can I hold them in contempt?
>
> [DEFENSE COUNSEL]: If that's what you tell them, yes; but you didn't tell him that in this case.

As this court explained in State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993), regarding the effect of the record on appeal being insufficient to review the issue raised by the appellant:

It is, however, the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn. R. App. P. 24(b); State v. Miller, 737 S.W.2d 556, 568 (Tenn. Crim. App. 1987). When the record is incomplete and does not contain information relevant to a particular issue, this court may not make a ruling. State v. Cooper, 736 S.W.2d 125, 131 (Tenn. Crim. App. 1987). In the absence of an adequate record, our court must presume the correctness of the trial court's ruling. Appellate courts may only review what is in the record and not what might have been or should have been included. Dearborne v. State, 575 S.W.2d 259, 264 (Tenn. 1978).

In this matter, while the defendant agreed at the hearing that a trial court may suspend a defendant's license and order that he not drive, the record on appeal does not contain a transcript of the hearing at which the defendant's driver's license was taken and he received instructions, the details of which were disputed at the contempt hearing, as to his continued driving. The record being inadequate for review of this issue, we presume that the trial court ruled correctly in finding the defendant in contempt of court.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the trial court's judgment.

_____
ALAN E. GLENN, JUDGE