IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 19, 2018

**STATE OF TENNESSEE v. CAMERON WAYNE CARAKER**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-A-763     Mark J. Fishburn, Judge**

_____

**No. M2017-02277-CCA-R3-CD**

_____

Defendant, Cameron Wayne Caraker, appeals the trial court's decision to revoke his probation and order Defendant to serve 120 days in custody before being restarted on probation. Defendant argues the trial court abused its discretion because there was insufficient evidence to prove he knowingly violated an order of protection. Upon review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Daniel Murphy, Nashville, Tennessee, for appellant, Cameron Wayne Caraker.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and Joseph Clifton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

From the record, it appears that in June of 2015, Angela Caraker took out an order of protection against her husband, Defendant, in Oklahoma.[1] Defendant was indicted by a Davidson County grand jury on March 27, 2017, for one count of felon in possession of

---

[1] The order of protection is not in the record. We glean this information from the testimony presented at the probation violation hearing.

a weapon and seven counts of violating an order of protection. Pursuant to a plea agreement with the State, Defendant pled guilty to two counts of violating an order of protection, and the remaining six counts of the indictment were dismissed. Defendant's agreed upon sentence was two consecutive terms of 11 months and 29 days, to be suspended and served on supervised probation. As a special condition of Defendant's plea, and as a condition of Defendant's supervised probation, Defendant was ordered to stay away from Ms. Caraker. Furthermore, the order of protection from June 2015 was to remain in effect until June of 2020.

On September 21, 2017, Defendant was charged in GS828624 with violating an order of protection.[2] At the preliminary hearing on the matter, Ms. Caraker testified regarding a specific incident that occurred on September 16, 2017, at Bass Pro Shops in Opry Mills Mall. The charge was subsequently bound over to the grand jury. As a result of the new charge, a probation violation warrant was filed alleging Defendant did not obey the laws of the State and engaged in threatening and intimidating behavior. The basis for these alleged violations was Defendant's new charge in GS828624. Additionally, the probation violation warrant alleged that Defendant did not adhere to special conditions of his supervised probation because he "failed to have no contact with [Ms. Caraker]."

*Probation Violation Hearing*

At the hearing on Defendant's probation violation, testimony largely focused on the Bass Pro Shops encounter. Defendant, Sherry Thompson (Defendant's mother), Ms. Caraker, and Wade Otis (Ms. Caraker's boyfriend) were all present during the September 16 encounter. No evidence was offered to indicate Defendant premeditated the interaction or knew Ms. Caraker would be present at the store ahead of time. Ms. Caraker, Mr. Otis, Ms. Thompson, and Defendant's friend, Dawn Miller, testified at the probation hearing. Defendant did not take the stand.

Ms. Caraker described that she heard "chaos" behind her in the hunting-bow aisle at Bass Pro Shops and noticed it was Defendant and his mother. Defendant "was hollering . . . that [Mr. Otis] was with a married woman." Defendant and Ms. Thompson then walked behind Ms. Caraker, and Defendant stated that Ms. Caraker was going to get what she deserved. Ms. Caraker did not notice Defendant take any photographs of her at this time. Later, a friend sent Ms. Caraker a post Defendant made on his Facebook page with a picture of Ms. Caraker and Mr. Otis from the encounter at Bass Pro Shops. Ms. Caraker described the message accompanying the photograph as threatening; however, the post was not entered as an exhibit at the hearing.

---

[2] The underlying warrant for GS828624 was not introduced as an exhibit at the probation hearing.

On cross examination, Defense Counsel introduced exhibits of private messages Ms. Caraker sent to Defendant during the months of July and August of 2017. Ms. Caraker acknowledged that she sent the messages, including nude photographs, but stated she did so only in response to Defendant initiating the conversation. Specifically, Defendant's messages asked Ms. Caraker to drop the order of protection and some included photographs of Defendant with other women. Ms. Caraker testified that she responded to these messages because she feared what Defendant may do to her, or himself, if she did not say what Defendant wanted to hear. At one point, the trial court clarified Ms. Caraker's testimony regarding the messages:

> COURT: Her testimony is . . . that she was responding to - - if I understood her testimony - - every one of these texts were in response to something that he had texted her; is that correct?
>
> MS. CARAKER: Yes. Yes, sir. Yes, it is.

Furthermore, Ms. Caraker detailed specific instances where Defendant drove by her place of employment to intimidate her. Ms. Caraker also described an encounter on July 1, 2017, in which Defendant was allegedly drunk or high and approached her when she was with a friend.

During Mr. Otis' testimony at the hearing, he recalled that he noticed Defendant in the hunting-bow aisle at Bass Pro Shops only because Defendant was "fus[s]ing over the color of [a hunting] bow." At the time, Mr. Otis did not know who Defendant was and was not certain whether Defendant walked in Bass Pro Shops before or after Ms. Caraker. Mr. Otis remembered Defendant and his mother walking by, and then Defendant walked back towards Mr. Otis and Ms. Caraker, looked directly at Mr. Otis, and said "that bitch is married." Defendant repeated the statement a second time, this time looking at Ms. Caraker. Mr. Otis did not see Ms. Caraker speak to or approach Defendant that day. Mr. Otis also remembered seeing the Facebook post Ms. Caraker referenced.

Ms. Thompson testified on Defendant's behalf that she spotted Ms. Caraker before Defendant, and told Defendant, "Oh my gosh, I think that's Angela." Ms. Thompson admitted that after Defendant noticed Ms. Caraker was present in the aisle, Defendant did not decide to leave the aisle or walk away. Ms. Thompson believed Defendant was upset about seeing Ms. Caraker with another man, so Defendant took a picture for proof during the couple's divorce. Defendant then told Mr. Otis that Ms. Caraker was married and that Mr. Otis was going to "end up just like the rest of them," referring to Ms. Caraker's other love interests. Ms. Thompson testified that she indirectly addressed Ms. Caraker, not Defendant. According to Ms. Thompson, after both parties walked away from the encounter, Mr. Otis approached Defendant regarding the comments. Ms. Thompson acknowledged that she was aware of the stay away order and the order of protection at the time of the interaction, but she did not understand the stay away order to mean

Defendant needed to leave Bass Pro Shops upon seeing Ms. Caraker. At the time of the Bass Pro Shop encounter, Ms. Thompson was not aware Defendant had been corresponding with Ms. Caraker via private message. Ms. Thompson admitted Defendant made the Facebook post with the picture of Ms. Caraker and Mr. Otis but did not describe the accompanying message as threatening.

Lastly, Dawn Miller testified on behalf of Defendant regarding their prior romantic relationship and Ms. Miller's conflict, and alleged confrontation, with Ms. Caraker as a result of that relationship.

At the conclusion of the hearing, the trial court held that Defendant's actions at Bass Pro Shops violated the terms and conditions of Defendant's probation. The trial court reasoned:

> [Defendant] apparently either refuses to abide by the order of protection . . . and/or . . . he doesn't listen to what the orders of the [c]ourt are, because I mean, he has got orders of protection, he has got restraining orders, stay aways on probation, yet by everybody's admission he sees her and approaches her and her boyfriend in the Bass Pro Shop and then takes a picture, not only does he take a picture for future possible evidence if she comes up to lie about him, but posts it on Facebook with some derogatory threatening type statements. . . . [H]e was doing it for the exact same . . . thing that she, in the Court's mind, that she says he was doing a lot of this stuff and that is intimidation.

Additionally, the trial court took into consideration all of the other evidence at the hearing, including Ms. Caraker's communicating with Defendant, as potentially mitigating Defendant's violations. The trial court sentenced Defendant to serve 120 days, with Defendant to be restarted on probation upon release. Following the decision, Defendant filed this timely appeal.

*Analysis*

Defendant argues that the trial court erred in revoking his probation because Defendant's brief and inadvertent encounter with Ms. Caraker at Bass Pro Shops did not amount to a knowing violation of the order of protection. *See* T.C.A. § 39-13-113. Additionally, Defendant argues that the specific requirements of the order of protection and stay away order were unclear, so Defendant could not have knowingly violated either one. The State argues that the encounter at Bass Pro Shops escalated from an inadvertent mishap to a deliberate attempt to violate the conditions of Defendant's probation when Defendant surreptitiously took a photograph of Ms. Caraker and her new boyfriend instead of staying away from Ms. Caraker. We agree with the State.

- 4 -

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1). The revocation of probation rests in the sound discretion of the trial court and will not be overturned by this Court absent an abuse of that discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); *see also State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013) (holding that an abuse of discretion standard with a presumption of reasonableness applies to all sentencing decisions). An abuse of discretion occurs when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).

We begin by examining Defendant's arguments regarding the order of protection. Defendant contends that the record is unclear as to the stipulations in the order of protection and that there was no evidence at the probation hearing to show that Defendant knowingly violated the order of protection. We agree with Defendant that the record is unclear. The trial court's reasoning references "requirements of the order of protection" but does not state whether the trial court considered the actual language of the order of protection before making its determination. Further, a copy of the order of protection was neither included as an exhibit to the probation hearing nor was included as a part of the record on appeal.

Defendant has the burden of "providing a record that conveys a fair, accurate[,] and complete account of what transpired with regard to the probation revocation." *State v. Felicia Mae Langford*, No. M2010-00340-CCA-R3-CD, 2011 WL 208369, at *1 (Tenn. Crim. App. Jan. 12, 2011) (citing Tenn. R. App. P. 24(b)), *no perm. app. filed*. While Defendant does not challenge the existence of an order of protection or that it was in place at the time of the alleged probation violation, this Court will not speculate as to the specific terms contained in the order of protection or whether Defendant knowingly violated one or more of the terms therein. "Appellate courts may only review what is in the record and not what might have been or should have been included." *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993) (quoting *Dearborne v. State*, 575 S.W.2d 259, 264 (Tenn. 1978)). The record is simply insufficient for this Court to determine whether the requirements of the order of protection were unclear or whether the trial court abused its discretion by stating Defendant knowingly violated the order of protection. We must presume the trial court was correct. *Id.*

Regardless of whether the terms of the order of protection were clear or whether Defendant acted knowingly in violation of those terms, Defendant's argument that the trial court abused its discretion and should not have revoked his probation based on the new charge is misguided. What Defendant's argument overlooks is that the alleged order of protection violation is not the only allegation in the probation warrant. In fact, the

probation warrant alleged three infractions: violating the rules of the state, failing to observe special conditions of the probation imposed by the court, and engaging in threatening and intimidating behavior. While the first and third violations refer to the new charge, the second violation alleges Defendant did not adhere to the conditions and orders of the court and "[f]ailed to have no contact with [Ms. Caraker.]" When there are multiple violations alleged in a probation warrant, "[a]ny one of these rule violations standing alone is sufficient to support revocation[.]" *State v. Lamont Christopher Brown*, No. W2007-00827-CCA-R3-CD, 2008 WL 726566, at *3 (Tenn. Crim. App. Mar. 18, 2008), *no perm. app. filed*.

To prove Defendant did not adhere to the stay away order, "the state must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" *State v. Jason L. Holley*, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App. Oct. 25, 2005) (citing *Harkins*, 811 S.W.2d at 83 n.3), *no perm. app. filed*. "[T]he proof of a probation violation need not be established beyond a reasonable doubt[.]" *Harkins*, 811 S.W.2d at 82 (citing *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

We find this Court's holding in *State v. Donald Edward Daniel* to be helpful in assessing whether the evidence was sufficient to prove by a preponderance of the evidence that Defendant failed to stay away from Ms. Caraker in violation of the order of the trial court and the conditions of his probation. *See* No. M2014-02048-CCA-R3-CD, 2015 WL 5451672 (Tenn. Crim. App. Sept. 16, 2015), *no perm. app. filed*. While *Donald Edward Daniel* was an appeal from a conviction of violating an order of protection as opposed to a revocation of probation, we find that the factual similarities are relevant. In *Donald Edward Daniel*, a woman took out an order of protection against her estranged husband and subsequently had a happen-stance encounter with him in the parking lot of a shopping center. *Id.* at *1-2, *5. Both the woman and her husband acknowledged they saw each other in the parking lot, but there was no verbal or physical interaction at that point. *Id* at *1-2. On the woman's route home, she noticed the husband's vehicle pulled over on the side of the road, blocking traffic, and the husband was attempting to take a picture of the woman and the passenger in her vehicle. *Id*. This Court held that the inadvertent encounter alone, in the parking lot, was insufficient to find a knowing violation of the order of protection; however, when the husband "stopped his vehicle on the side of the road for the purpose of taking pictures[,]" at that point, a knowing violation occurred. *Id.* at *5.

Defendant argues that his Bass Pro Shops encounter with Ms. Caraker was nothing more than happen-stance, similar to the first part of the parking-lot interaction in *Donald Edward Daniel*. Additionally, Defendant submits that his interaction with Ms. Caraker never rose to the level of deliberate action, in contrast to the husband's blocking traffic and getting a photograph in *Donald Edward Daniel*. However, in this case, the trial court

enumerated the exact factual similarity that Defendant claims does not exist between the facts of this case and the facts in *Donald Edward Daniel* when it held that Defendant, "by everybody's admission," saw and approached Ms. Caraker and Mr. Otis after the happen-stance encounter, took a picture of Ms. Caraker and Mr. Otis, and posted it "on Facebook with some derogatory[,] threatening[-]type statements." Just like the husband in *Donald Edward Daniel* who inadvertently drove past his wife in the parking lot of a shopping center, Defendant inadvertently ran into Ms. Caraker at Bass Pro Shops. If the interaction had ceased at that point, no violation would have occurred. However, Defendant's actions did not end with the happen-stance encounter. Rather than simply ignoring Ms. Caraker, Defendant approached Ms. Caraker and Mr. Otis, made multiple comments. He also took a photograph that he later posted on Facebook for, in the trial court's opinion, the purpose of intimidating Ms. Caraker. The trial court found Defendant's argument that the photograph was for evidentiary purposes only to be unconvincing, and the trial court did not credit Ms. Thompson's testimony that the post was unthreatening. "In probation revocation hearings, the credibility of the witnesses is for the determination of the trial judge," which shall be given the weight of a jury verdict. *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (internal citations omitted). The trial court ultimately held that "[Defendant] violated the conditions of the probation."

Based on the findings of fact by the trial court, we hold that the evidence does not preponderate against a determination that Defendant failed to stay away from Ms. Caraker and violated the terms and conditions of his probation by doing so. While Defendant also argues that there is nothing in the record that clarifies the stay away order, we find that argument to be without merit. If a defendant is present when the court announces its decision to grant probation, and the conditions thereto, "he is presumed to know the conditions of his probation." *State v. Mayberry*, 638 S.W.2d 422, 424 (Tenn. Crim. App. 1982). Ms. Caraker testified that she was present when Defendant pled guilty and the stay away order was given. Additionally, the record includes copies of the plea petition and agreement, the judgment form, and the conditions of probation, all of which show that Defendant agreed to stay away from Ms. Caraker. The trial court was well within its authority to revoke Defendant's probation solely on one of the three alleged violations: Defendant failed to adhere to the stay away order, an explicit condition of Defendant's probation.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE