# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 9, 2004

## RAYMOND MITCHELL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-B-1222      Seth Norman, Judge**

---

**No. M2003-02063-CCA-R3-PC - Filed September 17, 2004**

---

The petitioner, Raymond Mitchell, was convicted in 1996 of two counts of rape and one count of attempted rape. He pled *nolo contendere* to a third rape charge, which was reduced to sexual battery. He received a total effective sentence of fifteen years as a Range I, standard offender, and his convictions were affirmed on direct appeal. Subsequently, he filed a petition for declaratory judgment in the Chancery Court for Davidson County, alleging he was entitled to earn sentence reduction credits and challenging his classification as a "multiple rapist." The trial court dismissed the petition and he appealed. The Court of Appeals held that the Department of Correction ("DOC") did not err by classifying the petitioner as a multiple rapist and determining he was not eligible for sentence reduction credits. The petitioner then filed a petition for post-conviction relief, alleging ineffective assistance of counsel, prosecutorial misconduct, improper jury instructions, double jeopardy violations, and again challenging the sentence enforcement by the DOC. Following a hearing, the post-conviction court denied the petition, and this appeal followed. We affirm the order of the post-conviction court denying the petition but remand for entry of corrected judgments in Counts 2 and 3 to reflect that the petitioner is a "multiple rapist," and his sentences are to be served as such.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and
Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Jack Davis, Nashville, Tennessee, for the appellant, Raymond Mitchell.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The facts of this case were set out in the opinion of this court on direct appeal, affirming the petitioner's convictions:

> The [petitioner] was indicted on three counts of rape accomplished by fraud and one count of attempted rape by fraud. Before trial, one of the rape charges was severed by the prosecution and set to be adjudicated separately. The remaining two counts of rape by fraud and the count of attempted rape by fraud were tried together.
>
> The [petitioner] was tried by a jury in the joint proceeding and was convicted as charged on the two counts of rape and the single count of attempted rape. The trial court sentenced him as a Range I standard offender to ten years for each conviction of rape and to five years for the conviction of attempted rape. The ten-year sentences were ordered to run concurrently to each other and consecutively to the five-year sentence, for a total effective sentence of fifteen years.
>
> On the severed count of rape by fraud, the [petitioner] entered a plea of *nolo contendere* to the lesser offense of sexual battery. The trial court sentenced the [petitioner] to two years on that conviction, to run concurrently to the above fifteen-year sentence. The [petitioner] reserved a certified issue for appeal from the plea agreement. His appeal in that case has been consolidated with his direct appeal from the jury trial.

State v. Raymond Mitchell, III, No. M1996-00008-CCA-R3-CD, 1999 WL 559930, at *1 (Tenn. Crim. App. July 30, 1999), perm. to appeal denied (Tenn. Jan. 31, 2000). Subsequently, the petitioner filed a petition for declaratory judgment in the Chancery Court for Davidson County and was denied relief. He appealed. The appellate opinion set forth the following relevant facts:

> This appeal involves a dispute between a prisoner and the Tennessee Department of Correction regarding the Department's decision to classify the prisoner as a multiple rapist under Tenn. Code Ann. § 39-13-523(b) (2000). After the Commissioner of Correction denied his petition for a declaratory order, the prisoner filed a petition for a declaratory judgment in the Chancery Court for Davidson County claiming that the Department had misclassified him and, if it had not, that he was still entitled to earn sentence reduction credits because he was a Range I standard offender. The trial court

dismissed the petition, and the prisoner has appealed. We have determined that the Department properly classified the prisoner as a multiple rapist and that the prisoner is not otherwise entitled to earn sentence reduction credits. Accordingly, we affirm the trial court's judgment.

Mitchell v. Campbell, 88 S.W.3d 561, 563 (Tenn. Ct. App.), perm. to appeal denied (Tenn. 2002).

The petitioner filed a *pro se* petition for post-conviction relief on April 4, 2001. Counsel was appointed, and an amended petition was filed on August 9, 2001. Counsel was relieved and new counsel was retained on April 24, 2002. A second amended petition was filed on October 3, 2002, and hearings were held on December 17, 2002, and May 2, 2003.

As we will explain, we have had substantial difficulty in determining what claims were presented to the court at the post-conviction hearing and which of the numerous claims raised on appeal are, in fact, properly before this court. The *pro se* petition for post-conviction relief presented thirteen claims for relief, some of which were closely related. The first amended petition, which was filed by counsel, continued to argue all thirteen of these claims. The second amended petition, filed by new counsel, presented arguments only as to claims 1, 2, 5, 12, and 13. At the post-conviction hearing, counsel for the petitioner, who did not testify, did not specifically identify the issues on which they were proceeding, but it appears, from the witnesses presented and the nature of the questioning, that they pursued only original petition issues 5 (the prosecutor failed to disclose the identity of an exculpatory witness), 12 (trial counsel was ineffective in not obtaining the testimony of this witness at trial), and 13 (the DOC was illegally requiring that the petitioner's sentences be served at 100%, rather than 30% as provided by the judgments.) In its findings of fact and conclusions of law, the post-conviction court ruled adversely to the petitioner on issues 1, 3, and 13 and, as to the other claims raised in the petition, determined they were without merit because "no proof was offered at the evidentiary hearing in support of such." Since the petitioner neither testified at the evidentiary hearing nor presented any favorable witnesses, the proof consisted solely of witnesses, as we will explain, who denied the allegations of the petition. We now will consider the issues on appeal.

Roberta Anderson, a sentence manager with the DOC, testified that the petitioner had "finished" his five-year sentence, reduced by sentence credits, and was serving his two concurrent ten-year sentences, which were at 100%, although the judgments for these sentences state they are to be served at 30%.

The petitioner's trial counsel testified that he had practiced law for twenty-five years and, along with another attorney, had represented the petitioner at his trial. He said they had filed motions claiming that the indictment was unconstitutional, to dismiss the indictment, and for a bill of particulars. In the analysis section of this opinion, we will review counsel's testimony regarding the specific claims as to ineffective assistance of counsel.

The assistant district attorney general in the petitioner's original trial testified as to witness information provided to defense counsel, denying that he had withheld exculpatory information. We will review the specifics of his testimony in the analysis section of this opinion.

Gail S. Barbee, the Director of Board Operations for the Tennessee Board of Probation and Parole, testified that although the petitioner had met with the parole board, by statute he was required to serve 100% of his rape sentences.

As we have stated, the petitioner did not testify at the hearing.

## ANALYSIS

### I.  Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

### II.  Statute of Limitations

First, we will consider the State's argument that the petitioner's appeal should be dismissed for lack of jurisdiction because his petition was not timely filed.

By statute, a person in custody must file a petition for post-conviction relief within one year "of the date of the final action of the highest state appellate court to which an appeal is taken . . . or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a) (2003). Further, "[t]ime is of the essence of the right to file a petition for post-conviction relief . . . and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise." Id. Also, due process may, in limited circumstances, require tolling of the post-conviction statute of limitations. See Seals v. State, 23 S.W.3d 272, 278-79 (Tenn. 2000); Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992).

From our review of the record, it is clear that this petition was untimely. Our supreme court denied the petitioner's application for permission to appeal on January 31, 2000. Although the petitioner signed and dated his original petition for post-conviction relief on April 2, 2001, more than

two months after the expiration of the one-year period, he failed to explain why he did not file his petition within the one year or why the one-year statute of limitations should not bar his claim. However, the State did not raise this issue in its response to the petition or at the post-conviction hearing, but instead did so for the first time on this appeal.[1]

"Given the post-conviction statute's language conferring jurisdictional import to the timely filing of a petition, it is essential that the question of timeliness be resolved before any adjudication on the merits of the petitioner's claims may properly occur." Antonio L. Saulsberry v. State, No. W2002-02538-CCA-R3-PC, 2004 WL 239767, at *1 (Tenn. Crim. App. Feb. 9, 2004), perm. to appeal denied (Tenn. June 1, 2004) (citing Tenn. Code Ann. § 40-30-102(b) (2003)).

"In many cases that have come before the appellate courts in which the petitioner's compliance with the statute of limitations is an issue, the appellate courts have remanded for evidentiary hearings." Id. at *2 (citing Butler v. State, 92 S.W.3d 387, 390 (Tenn. 2002)). In Saulsberry, the petitioner admitted that his filing was untimely, and thus there was no question of fact as to whether the petition had been timely filed. Id. (stating that in the "typical case . . . there is a question whether the petitioner has actually complied with the statute of limitations or has conformed to the prison mailbox rules"). In the present case, there are none of the typical disputes, for example, illegibility of the stamped filing date or whether the petition was timely filed and then lost in the prison "mail" system. Instead, the petitioner admits in his original petition that the Tennessee Supreme Court denied his application for permission to appeal on January 31, 2000, and he signed and dated the petition on April 2, 2001. Therefore, his petition was subject to summary dismissal. See id. (citing Tenn. Code Ann. § 40-30-106(b) (2003) ["If it plainly appears from the face of the petition, . . . that the petition was not filed . . . within the time set forth in the statute of limitations, . . . the judge shall enter an order dismissing the petition."]; State v. Nix, 40 S.W.3d 459, 464 (Tenn. 2001) (compliance with statute of limitations is element of right to file petition for post-conviction relief; incumbent upon petitioner to allege either compliance with or tolling of limitations period)). In the present case, just as in Saulsberry, "[t]he fact that the lower court did not take that action does not allow the petitioner, at this juncture, to avoid operation of the statute of limitations. As such, his appeal must be dismissed due to the untimeliness of the underlying petition. This court lacks jurisdiction to adjudicate the case." 2004 WL 239767, at *2. Additionally, the petitioner's claims do not fall within any of the three exceptions set forth in Tennessee Code Annotated section 40-30-102(b)(1)-(3), which would excuse the late filing, nor does the petition raise the types of due process concerns that would also toll the statute of limitations. See Sample v. State, 82 S.W.3d 267, 273 (Tenn. 2002) (statute of limitations tolled due to a late arising suppression of exculpatory evidence claim); Williams v. State, 44 S.W.3d 464, 477 (Tenn. 2001) (misrepresentation by attorney as to continuing representation, rather than mere attorney negligence, possibly tolled the statute of limitations); Seals, 23 S.W.3d at 278-79 (statute of limitations tolled due to mental incompetence

[2]We have previously expressed our concern with the State raising the statute of limitations defense for the first time on appeal. John Parker Roe v. State, No. W2000-02788-CCA-R3-PC, 2002 WL 31624850, at *12 n.2 (Tenn. Crim. App., Jackson, Nov. 20, 2002), perm. to appeal denied (Tenn. Feb. 24, 2003). We attribute this problem to the fact that the assistant attorney general representing the State on appeal is usually not the same attorney representing the State at the post-conviction hearing.

of petitioner); Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995) (grounds for relief arose after the statute of limitations normally would have run); Burford, 845 S.W.2d at 206 (petitioner unable to file post-conviction claim in one county until conviction in another county had been set aside).

Despite our conclusion that the petition was barred by the statute of limitations, we none-theless will address the issues raised by the petitioner because of the possibility of a further appeal of this matter. See Jacobs v. State, 450 S.W.2d 581 (Tenn. 1970); State v. Pendergrass, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999).

### III.  Ineffective Assistance of Counsel

In the original and the first amended petition, seven separate claims were made that trial counsel had been ineffective.  In the second amended petition, the only claim of ineffective assistance of counsel was that counsel "failed to subpoena the rape victim's alleged boyfriend as a witness to rebut the false testimony given in the presence of the jury by the alleged rape victim." This was the only ineffective assistance of counsel claim pursued at the evidentiary hearing.  On appeal, the petitioner has raised seven claims of ineffective assistance of counsel, but, of these, we will consider only the claim argued at the hearing, for the remaining six, not having been pursued, are waived.  See Brimmer v. State, 29 S.W.3d 497 (Tenn. Crim. App. 1998).

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law.  See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective.  The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results."  Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064.  The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable

considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We note that the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

As to the sole allegation of ineffective assistance of counsel pursued at the post-conviction hearing, namely, that trial counsel failed to subpoena a supposedly favorable witness who could rebut the victim's "false testimony," we note initially that the post-conviction court did not specifically address this allegation in its opinion, although stating that, in addition to his sentencing claims, "[t]he petitioner alleged other grounds for relief which were included in his Petition for Post-Conviction Relief, but no proof was offered at the evidentiary hearing in support of such. The Court accordingly finds no merit to these other claims." The post-conviction court was correct in this analysis, for the only "proof" at the hearing as to ineffective assistance of counsel, since the petitioner did not testify, was the testimony of trial counsel who denied that he had been ineffective,

explaining efforts he had made to locate the so-called "exculpatory" witness and reasons why the witness would not have been helpful, as well as the testimony of the prosecutor at trial, who opined that the witness would not have been exculpatory.

This claim was explained in the second amended petition as "potentially exculpatory evidence was withheld by the State regarding one witness' [sic] boyfriend." Apparently, the petitioner's theory, as stated by his attorney at the post-conviction hearing, was that the testimony of this boyfriend "would have some bearing on the jury's opinion of whether [the petitioner] could have pulled off this trickery. Whether the victim's [sic] honestly believed that this caller [the petitioner] was that boyfriend."

At the hearing, the petitioner's trial counsel was questioned as to his knowledge of the victims' boyfriends:

> Q    And did you discover any of the identities of these alleged boyfriends?
>
> A    I think sometime, I'll answer this then I'd like to give the background, if I could.
>
> Q    All right.
>
> A    Sometime after the case was set for trial, and maybe within days of it going to trial, I think you-all have my file, but I don't remember the note, seeing the note in the file. Someone called our office and said we have a name, and perhaps gave a number. But we were never able to locate that person. And this would have been, originally the case was set for trial in the snow and it was put off a week. So I don't remember the time frame, but I know it was a very short time frame.
>
> . . . .
>
> Q    What efforts did you take to find this person?
>
> A    We called the number. I think my investigator at that time, tried to locate him. That I can't be sure of, it's been a while. If I could explain something?
>
> Q    Certainly.
>
> A    The pre-trial motions in this case, the first motions that were filed on the indictment was the indictment was unconstitutional. That is it said fraud, without defining what fraud was. That was denied.

Then we filed a motion to dismiss the indictment because it did not put a factual allegation as required by the statute. That is, if they are going to say fraud, they should put the facts in the indictment that substantiate the fraud. That was denied.

Then we filed another motion for a bill of particulars. Saying okay, if you say the indictment is good, Judge, then let the State come forward and tell us talk to what this fraud is in a bill of particulars. The Court said we were only entitled to the date, time and place.

We took that issue all the way to the United States Supreme Court. Then I argued to the Judge, well Judge, if in fact, let's just assume that the fraud is impersonation, who did he impersonate? And the court said, you're not entitled to that information.

So when we got a call before trial, and I don't specifically actually remember, I've talked to some other people and I'm sure we got some call at the office, but I don't recall that being this is the person. It was, this is something we could look into and this is a phone number. I don't remember, but we were already told by the Court that we were not entitled to that information.

Trial counsel testified as to efforts to locate this witness and his opinion that the testimony of the witness could have "killed" the defense:

> Q   Do you believe that the identity of this alleged, this John Doe boyfriend would help you in a defense of [the petitioner] in this case?
>
> A   Sir, the phone call we received, I think was very very close, maybe within a day, two days, something of that of trial. And I don't recall that specifically. We had already been told we are not entitled to this information. Prior to the trial, I issued a subpoena for this witness. I issued a John Doe subpoena. In fact, John Doe subpoena was served on the investigator for the case. We served him with the John Doe subpoena.
> We had made every attempt that we could to get that information. And he was not a witness to the case. He is somebody I would have liked to have talked to. He is somebody I would like to know if he existed.
>
> Q   Do you think the presence of this person in front of a jury could have presented some difference in characteristics from [the petitioner]?
>
> A   Could have helped us, could have killed us.

Q     And –

A     I mean, you don't know. I would say he's better friends with [the victim] then [sic] he would be with [the petitioner] or with us. I wouldn't expect him to be real helpful, just from past experience.

At the hearing, post-conviction counsel were asked by the court whether this "John Doe" witness would be testifying and advised that they, themselves, had not located this witness and did not know whether he even existed:

[COUNSEL]:  Your Honor, we believe that this John Doe boyfriend would have provided exculpatory - -

THE COURT:  Where is the John Doe boyfriend?

[COUNSEL]:  He was never produced.

THE COURT:  Where is he today?

[COUNSEL]:  We don't know that he exists or does not exist.

THE COURT:  Well, how does [trial counsel] know whether he exists or not?

[COUNSEL]:  We believe [trial counsel] was in a better position at the time that he represented [the petitioner] at the trial to obtain this information.

THE COURT:  Why?  Why can't you do it now?

[COUNSEL]:  Well Your Honor, as, I guess we could. I checked the transcript, I don't see - -

THE COURT:  The only way I can determine what a witness would have said in a post conviction relief petition is if I hear that witness.

Trial counsel's uncontradicted testimony at the post-conviction hearing was that he issued a "John Doe" subpoena before the trial and attempted to ascertain the identity of this witness at trial, but was refused the information by the court. During the course of the trial, he decided not to pursue this witness any further. Since this witness was not produced at the evidentiary hearing, the petitioner has failed to show that he was prejudiced by counsel's not producing this witness at trial. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his

-10-

defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.").

## IV. Prosecutorial Misconduct

In his original petition, the petitioner alleged that his convictions were:

> based upon false testimony and the state prosecutor willfully, deliberately and knowingly withheld exculpatory evidence that could have proven the rape victim was committing perjury. The victim claimed that she had sexual intercourse with Petitioner because she thought Petitioner was her boyfriend. The District Attorney General['s] Office interviewed the alleged John Doe and learned that John Doe was not the victim's boyfriend and that he had severed their sexual relationship months prior to the alleged rape due to the victim's promiscuous behavior. The prosecutors suppressed this information, refused to give Petitioner John Doe's name and knowingly allowed false testimony to be presented to the jury which, consequently, violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article I § 8, of the Tennessee Constitution.

In his second amended petition, the petitioner restated the issue as "[w]hether Petitioner's convictions were based on [the] State's unconstitutional failure to disclose exculpatory evidence in the form of the name and identity of a "John Doe" alleged boyfriend of one of the State's witnesses." As with the other claims, the only testimony at the hearing as to this assertion came from trial counsel and the prosecutor, both of whom denied that exculpatory information had been withheld. Nonetheless, we will consider the claim.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215, 218 (1963), the United States Supreme Court held that the prosecution has a duty to furnish to the defendant exculpatory evidence pertaining either to the accused's guilt or innocence or to the potential punishment that may be imposed. The Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. The duty to disclose extends to all information favorable to the accused whether the evidence is admissible or inadmissible, State v. Spurlock, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993), and to information "which might be useful to the defense[.]" Branch v. State, 4 Tenn. Crim. App. 164, 173, 469 S.W.2d 533, 536 (1969). However, the State's duty to turn over evidence under Brady does not extend to information that the defense either already possesses or is able to obtain or to information not in the possession or control of the prosecution. Wooden v. State, 898 S.W.2d 752,

755 (Tenn. Crim. App. 1994) (citing Banks v. State, 556 S.W.2d 88, 90 (Tenn. Crim. App. 1977)). Further, Brady does not require the State to investigate on behalf of the defendant. State v. Reynolds, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984).

In order to establish a due process violation under Brady, a defendant must show the following:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
>
> 2. The State must have suppressed the information;
>
> 3. The information must have been favorable to the accused; and
>
> 4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995) (citations omitted).

At the post-conviction hearing, the assistant district attorney general testified as to his knowledge of the "John Doe" witness:

> Q   General [], for purposes of this post conviction proceeding, would you like to make a statement that would be proof as evidence?
>
> A   Yes. As far as this witness, Your Honor, as far as [trial counsel] testified we were not ordered to divulge the name of this witness by [the trial judge's] bill of particulars. Obviously if we were aware if the witness had potential exculpatory information, we would. We were able to find this witness, I think on the Friday before the trial started on a Monday. His name was Jeff. I don't recall his last name right off the top of my head. But he was now living out of state. We talked to him and discussed what [the victim] was going to testify to. He corroborated it, yes, he had been her friend and had gone over there at various times, early morning hours, had called her and whispered on the phone and things of that nature. So he basically corroborated the witness.
>     [Co-counsel] and I determined whether we should give that name or not, he was now married and didn't want to get involved in this case. But we did give that name to the defense when we found him and what the phone number was. I can't testify whether they talked to him or not, but in interviewing him there was absolutely nothing

exculpatory in his statement.  But we did provide the information and
his location.

On cross-examination, the assistant district attorney general explained why he did not believe the petitioner would have benefitted had this witness appeared at the trial:

Q    Did you hear this man's voice?

A    Yes, I normally do when I talk to people.

Q    Okay.  And you don't think that the jury could have heard any differences between the voice of this witness and the voice of [the petitioner]?

A    Well, if you review the transcript, she talked about that he was whispering and voices being disguised.  At times he would whisper and he would, so it was a whispering voice, so I don't know.

Q    Would you agree that were the jury able to differentiate between this man and [the petitioner] that that could have been favorable to [the petitioner]?

A    No, based on the proof, I don't.

The post-conviction court determined that it could not make a determination concerning the exculpatory value of this witness without having the witness testify at the hearing.  Since the only witness presented at the post-conviction hearing on this issue denied the various allegations in this regard, it is clear that the petitioner has failed to show by clear and convincing evidence that the testimony of this "John Doe" boyfriend was obviously exculpatory, favorable to the accused, or suppressed by the State.  See Edgin, 902 S.W.2d at 389.

In addition, this allegation has been waived for failure to present it on direct appeal.  "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ."  Tenn. Code Ann. § 40-30-106(g) (2003).  The petitioner failed to explain in his petition or at the post-conviction hearing why this issue was not raised on direct appeal.  This is an elementary part of any petition for post-conviction relief.  See Tenn. Code Ann. § 40-30-104(e) (2003).

### V.  Percentage of Sentence to be Served

The petitioner argues on appeal, as we understand his claim, that his judgments provide that his sentences are to be served at 30% and do not classify him as a multiple rapist and the DOC is

bound by these. The State disagrees, arguing that this identical claim was resolved against the petitioner in <u>Mitchell v. Campbell</u>, 88 S.W.3d 561 (Tenn. Ct. App. 2002). As we will explain, we agree with the State.

The judgment forms are included in the record on appeal, and, on all four documents, the box for "Standard 30% Range 1" is checked and the box beside "multiple rapist" is not checked on any of the forms. In <u>Mitchell</u>, 88 S.W.3d at 566, the Court of Appeals rejected this same claim by the petitioner:

> Tenn. Code Ann. § 39-13-523(b) . . . was part of his sentence when he was tried and convicted of multiple rapes in 1996. The Department had no discretion regarding the application of Tenn. Code Ann. § 39-13-523(b) to [the petitioner] in light of his two rape convictions. Accordingly, the Department did not err by classifying [the petitioner] as a "multiple rapist" for the purpose of Tenn. Code Ann. § 39-13-523(b) and by determining that he was ineligible to earn sentence reduction credits.

<u>Id.</u> (footnotes omitted).

Accordingly, we conclude that the petitioner made this same argument in <u>Mitchell</u>, where the court determined that it was without merit. Applying the law of the case, we conclude that this issue was previously resolved against the petitioner and cannot be litigated anew. <u>See</u> <u>Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.</u>, 975 S.W.2d 303, 306 (Tenn. 1998).

## VI. Other Claims

On appeal, the petitioner has presented a number of additional claims, none of which was argued or even acknowledged at the post-conviction hearing and most of which were last recited in the first amended petition but not the second. No explanation is given as to why these long unpursued issues have been resurrected on appeal. We now will review the claims made on appeal, observing first that we have the same problem as did the post-conviction court in differentiating between certain of the claims, which appear to be nearly identical.

In his appellate brief, the petitioner presents the additional claims that: <u>Issue I</u> – requiring him to serve 100% of his rape sentences violates, *inter alia*, his Fourth and Fourteenth Amendment rights (apparently a new claim raised for the first time on appeal); <u>Issue II</u> – the State failed to notify him that he would serve 100% of his rape sentences if convicted (raised in the second amended petition and determined by the post-conviction court adversely to the petitioner); <u>Issue III</u> – as in the previous issue, the petitioner realleges that the State should have given him notice that "he would be tried as a multiple rapist and if convicted would have to serve" his sentences at 100% (raised in second amended petition and determined by the post-conviction court adversely to the petitioner);

Issue IV – the petitioner should serve his rape sentences at 30%, as provided by the judgments, and not at 100% (argued at the hearing and determined by the post-conviction court adversely to the petitioner); Issue V – the petitioner presents five separate claims of ineffective assistance of counsel (not raised in the second amended petition or at the hearing); Issue VI – trial counsel was ineffective for failing to subpoena a former boyfriend of the victim or seek a continuance of the trial (pursued at the hearing and determined by the post-conviction court adversely to the petitioner); Issue VII – the State failed to disclose the name and identity of a former boyfriend of one of the victims (pursued at the hearing and determined by the post-conviction court adversely to the petitioner); Issue VIII – the petitioner's multiple rape convictions violate his double jeopardy and due process rights (not pursued at the hearing); Issue XI [sic] – faulty jury instructions (apparently raised for the first time on appeal).

Thus, following the post-conviction hearing, the court ruled adversely to the petitioner as to Issues II, III, IV, VI, and VII. As to Issues II and III, the post-conviction court correctly determined that the petitioner "has not shown . . . prejudice" by lack of notice. Finally, as the post-conviction court noted, the Tennessee Supreme Court has previously held that the "[n]otice such as that rule [Rule 12.3 of the Tennessee Rules of Criminal Procedure] requires is not constitutionally mandated." State v. Harris, 919 S.W.2d 323, 331 (Tenn. 1996) (citing State v. Berry, 592 S.W.2d 553, 562 (Tenn. 1980)). As we have previously stated, the record supports these determinations. The post-conviction court found as to the numerous claims which had been set out in his original, first, and second amended petitions that "no proof was offered at the evidentiary hearing in support of such [and] [t]he court accordingly finds no merit to these other claims."

In Brimmer, 29 S.W.3d at 530, this court explained that a post-conviction claim is waived when no proof is presented at the evidentiary hearing as to the claim:

> There is no evidence at the post-conviction hearing concerning these allegations and we cannot speculate as to the substance of the claims. "We [must] decide cases . . . on the basis of the record as presented to us for our consideration." Dearborne v. State, 575 S.W.2d 259, 264 (Tenn. 1978). The burden is always upon the appealing party to develop a record which conveys a fair, accurate, and complete account of those proceedings which form the basis of the appeal. Id.

Thus, appeal claims I, V, VIII, and XI are waived because no proof was presented in support of them at the evidentiary hearing.

**CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the order denying the petition for post-conviction relief. We remand the matter for entry of corrected judgments as to Counts 2 and 3 of Indictment No. 95-B-1222 to reflect that, as to each count, the petitioner is a "multiple rapist,"

and his sentences are to be served as such.

_____
ALAN E. GLENN, JUDGE